Ruffin, Chief Justice,
 

 having stated the case as above, proceeded: — It is clear, that the deed offered to the plaintiff is altogether insufficient. No doubt, the defendant intended to comply with the contract, and both he and the plaintiff thought he was doing so. But the deed does not
 
 *163
 
 purport to be the deed of James Dix; the owner, but of Tilomas as the attorney. Allusion is not had to method of signing only. It may not be material whether it be signed J. D. by T. D., or T. D. for J. D. But the instrument must profess in its terms to be the act of the principal. Besides, if it had been .in that respect good, it would not be effectual for the want of delivery. The defendant says, in the answer, that he did not deliver it because he thought it necessary-to retain the title as security. It is now too late to deliver it, had it been a proper deed, as the death of his' principal revoked the power.
 

 An instrument executed by an atorney Jtt°rn?y
 
 f
 
 pal, may be A^theat-torney) im-principal), or B. (the-byMthe profess in ^fl^ct0 oftheprin-cipal"
 

 If two persons contract that one shall convey to the other the land of a third person, or that he will cause the
 

 Upon this ground alone the decree seems to have been based. It is not supposed that any other difficulty mentioned in the bill had any influence upon the Court. There is no defect of the title of James Dix stated in the decree or found by the master. The plaintiff’s possession constitutes a title against the Samuels
 
 prima facie ;
 
 and upon those pleadings does so conclusively; for the cause is set for hearing on bill and answer, and the answer is precise in the denial of their title. Besides, the title is immaterial. The contract is only for such title as James Dix had after getting a reconveyance from Dabney; which has been done. The sole foundation of the decree, therefore, is, that James Dix has not conveyed to the plaintiff; and, therefore, that the plaintiff is entitled to recover back that part of the purchase money which he has paid, and interest on it, and be discharged from any further payment.
 

 To sustain the decree, it is necessary to regard the contract in this case as one between the parties to this suit exclusively, independent of any authority from James Dix, and supposing him not to be bound by it. Even in that point of.view, the plaintiff would have many difficulties to contend with. If two persons contract that one shall convey to the other the land of a third person, or that he will cause the owner to convey it, is it certain that equity will entertain a bill for specific performance, or to rescind the contract ? Will not the parties be left to law in so obvious a case of speculation? But if a Court of Equity can inter-'fere at all, will more be done than to stop such part of the
 
 *164
 
 Purc^ase money as may remain unpaid, until the vendee can ascertain his damages at law for the breach of covenant j-,y ^ 0ther party ? If he gets into possession by virtue of the contract, is he to retain it and not account for rents and profits, and yet recover back the whole purchase money and interest, although the estate may have fallen one-half in price since the contract? If it had risen, and the vendee had recovered the increased value in damages, the vendor could not be relieved; for he could not make a title, and therefore could not have a decree for specific execution; and, on the other hand, would have no equity to compel the other to accept a return of the purchase money, merely because he could not fulfil his stipulations, though that inability was known when he entered into them. The like reasons seem to apply to one who buys from a person who, he knows, cannot make a title, and is undertaking to sell that which belongs to another. It is a wager on the rise and fall of the property. The Court might restrain the collection of the present judgment, upon the ground of the defendant’s non-performance of his contract, for a reasonable time. But it is not seen how the plaintiff could have a decree for the sum formerly paid ; for the bill is not for specific performance, but in respect of that sum, is for a mere money demand, arising simply from non-performance. It is a substitute for the action of covenant.
 

 owner to convey it, whether equity will entertain a bill for specific performance, or to rescind the contract; or whether it will not leave the parties to their remedies at law. Qu?
 

 In such a case, if the vendee has paid part of the purchase money, it is not seen how he can recover it back in equity.
 

 But the contract here is not of that character. It has been argued, that it is, because James Dix is not bound by or in the instrument of October the 9th 1818, but the defendant only. That is true, if it be inquired whose deed that obligation is? It is, unquestionably, the bond of Thomas, and not of James. The former seals it, and he speaks in it, throughout; and the latter, not at all. But it states, that Thomas was, in fact, the attorney of James, and that as such he had made a contract for his brother to sell and convey the land to the plaintiff. He was in truth the agent of James, -constituted by a sufficient letter of attorney, not only to contract but to convey. The instrument is evidence of the contract against James, and makes it binding on him. The transaction was prior to the statute
 
 *165
 
 of frauds, and a contract of James, by parol, made by his agent, was good. But it, would be equally so now; for the statute requires a writing to be signed by the party to be charged therewith, or some other person thereto by him lawfully authorised. Within the statute, the signature need not be that of the principal, nor in his name; but that of the agent is sufficient. ' Besides, the contract was recognized and ratified by James himself. Over and above the answer, there is complete proof of that. James accepted the bonds, sued on one and recovered judgment and endorsed the other. He conveyed 'other parts of the lot, and in the deed calls this portion of it the property of the plaintiff. But the answer, which is admitted by the plaintiff ■'to be true, puts it beyond a.cavil.
 

 Within the statute of frauds, the signature to contract for the sale ofland need not be that of the principal, nor in his name; that of the agent is sufficient.
 

 The case then is, that the plaintiff contracted with James Dix, the owner, for the purchase; and that, as he was embarrassed, and had encumbered the estate, he required a guarantee against the encumbrance, who would stipulate for its extinguishment within a reasonable period, and a conveyance of the title of the vendor; and that the vendor has died without conveying. As a mere personal covenant this Court has nothing to do’ with it, were it not that the defendant has become the owner of the plaintiff’s debt, which the Court will not suffer-him to collect, if the vendor will not make the conveyance which he contracted to make. But the defendant stands upon that instrument as the surety of his brother; and the plaintiff can have no relief on it against the surety, without having the principal before the Court. The relief which the plaintiff seeks, cannot be obtained, but as a consequence of having the agreement rescinded. The Court cannot decree it to be rescinded, without having the devisee of the vendor, or his heirs, before the Court. Justice to the defendant makes that indispensable. How would it looí?, if, after making this decree, the vendor should still insist.on the agreement, and file.his bill to compel this plaintiff to accept the title; and what would there be to prevent it ? It may be said, that it is the business of the defendant to procure the conveyance; and that perhaps the heirs will not convey, even after decree, and the plaintiff ought not to be obliged
 
 *166
 
 to pay the money, until the deed be approved and delivered. The neglect of the defendant may ultimately affects the costs; but it cannot make him answerable to the plaintiff'in the first instance; at least, not in this Court. Disobedience to the decree is not to be anticipated. But if it were to occur, the Court would enforce obedience. If the case rested between the plaintiff and the heirs, they would be at liberty to modify, perform or cancel the contract. But the defendant has an equity as surety, that no collusion between the plaintiff and those succeeding to the vendor can overcome; and he has a right to insist that the plaintiff shall require the heirs to convey, or that he shall be discharged. He has also an equity as assignee, not only that the plaintiff shall require the conveyance, but upon the heirs that they shall make it. Those persons could not by agreement rescind the contract, so as to defeat the defendant’s right, as assignee, to receive the money due on the bond. Much less would the Court allow the heirs to hold out against a decree, so as to throw the burden or the loss on the defendant. If the vendor would not convey, and the plaintiff elected not to pay upon a decree alone, without a deed actually made,^ the Court might then rescind the contract at his instance. But what then ? Why it would stand rescinded for the benefit of the surety, as well as the other parties. Upon what terms ? That the vendor, and not the surety, in case the former was able, should repay the purchase money to the plaintiff; and then so much of it would be applied to the discharge of the defendant’s judgment as would satisfy it. Moreover, the plaintiff would then" be required to surrender the possession and account for the rents and profits; and if the surety were held liable at all upon his contract, he would have the advantage of that deduction. In what situation does the decree pronounced leave these parties
 
 1
 
 The plaintiff does not even offer to surrender the possession to anybody after seventeen years enjoyment without rent, is allowed still to keep possession, and get back from the surety the whole purchase money, with interest on it; and this not in a case where the vendor cannot make title, but only will not. If it be said> that he is accountable to the owner for
 
 *167
 
 rent, and may have to pay him, so much the worse. Then that monev will be taken out of the surety’s pocket, to be .. .... . , put into his principal s; and the plaintifi wishes to carry on his s'uit in that way which will enable him or his vendor to do such palpable injustice. ’
 

 It cannot be said that the contract. has been abandoned by the delay. The plaintiff has been in possession under it all the time. It is nearly certain, that each party thought it had been executed. At any rate the plaintiff waived the delay ; he sought indulgence himself,.and raised no objection to the title, until he made it in this suit. But be that as it may, the principal contracting party must be before the Court, as well in a suit to have a contract declared null, upon the ground of laches and abandonment, as when it is sought to have it rescinded because it was improperly obtained, or cannot be performed. Any other course would sacrifice the rights of the defendant, to enable the plaintiff to get rid of a losing bargain; or open the door to collusion against the defendant, between the plaintiff and his vendor.
 

 The injunction is merely incidental to the principal relief; and cannot be sustained unless those persons are parties against whom the principal relief is to be decreed. The bill, for these reasons, might have been dismissed on the hearing; or the Court might have allowed it to stand over for an amendment to bring in those parties; as to which last, however, its being an injunction cause might be a material consideration as to the terms. But without those parties, the plaintiff could not have a decree; much less, such a decree as this ;■ which must have been greatly modified, upon the merits, if those, persons had been parties, whether by the decree the contract had been enforced or rescinded.
 

 The -opinion of this Court is, that there is error in the decrees of the Superior Court of Equity, in perpetuating the injunction, and in ordering the payment,'by the defendant to the plaintiff, of the sum of eleven hundred and fifty-two dollars and thirteen cents, with interest, or any part thereof; and in directing the defendant to pay, the costs of this suit; and therefore that it be wholly reversed, and the costs
 
 *168
 
 decreed against him, if already paid by the defendant, be restored to him.
 

 The Court does not dismiss the bill, inasmuch as it does not appear that any objection was made at the hearing of want of parties, and it is not raised in the answer. But the cause will be remitted to the Court of Caswell, to be proceeded in further, according to right, and then the necessary amendments may be asked for. Doubtless that Court will make it the interest of the plaintiff to speed the cause to a hearing against the parties he may bring in, and to prosecute it faithfully, by the control it has over the injunction ; which is now continued till the further order of that Court; as is also the question of costs.
 

 Per Curiam. Judgment reversed, and the cause remanded.