Daniel, Judge.
 

 The claim of Edward Davis, in right of his wife, to the legacy under her father’s will, rests wholly on the construction which the Court may make on the three following parts of the will: On the second page of the will the testator says, “ Having heretofore given and conveyed to my daughter Ann Davis, and her husband Edward Davis, a' large and valuable real estate, besides sundiy personal chat-j tels, I do now hereby confirm the same. And I do hereby devise to my son William Cain in trust
 
 for the separate and sole use
 
 of my daughter Ann Davis and her children the sum of $4,000, being part of the sum paid by me to Dr. Thomas Hunt for the re-purchase of the land, &c., which sum of money shall be laid out by the said William, his heirs, executors, &c., in such ways as he or they may deem best for my said daughter Ann Davis and her children, and for their sole and separate use and benefit.” On the third page of the Will, after giving some legacies of slaves to other person's, the testator says: “ All the rest of my slaves, not before given or devised, I give and bequeath to my son William Cain, my son-in-law Willie P. Mangum, my daughter Polly Sutherland, and my son William
 
 in trust
 
 for my daughter Ann Davis and her children, to be equally divided between them share and share alike.” On the fourth page of the will, after directing his executors to sell the residue of his estate, and pay his debts, pecuniary legacies, and the charges d
 
 *306
 
 administering, the testator says:
 
 “
 
 And the balance remain-i"g thereafter I give and bequeath to my son William Cain, Willie P. Mangum, Polly Sutherland, and to my son William in trust
 
 for the sole and separate use and benefit
 
 of my daughter Ann Davis and her children, to be equally divided among them share and share alike.” Mrs. Davis had eight children, all alive at the death of her father, the testator.
 

 When the testator first' mentions the Davis family in his will, he then declares that he had before given to Davis and his wife a large real and personal estate. This declaration was made, not merely with a view of confirming the said gift, but to shew Davis that he eught not to complain, that the property then about to be settled on his wife and children should be so done in exclusion of himself. There is but one trustee, and the whole fund, contained in the three aforementioned parts of the will, is bequeathed to that trustee in trust for Ann Davis and her children. The testator in his bequests of two parts of this fund, says it is in trust for their
 
 sole and separate use.
 
 In the intermediate bequest of the balance of the slaves-, the testator has omitted to say, that it was- in trust for the
 
 sole use
 
 of Ann Davis and hex-children,- bií't he has only said
 
 in trust
 
 for Ann Davis and her children. If this elause stood alone, and there was nothing else to explain the intention of the testator, the husband would be entitled to that portion of the slaves held in trust for his wife.- Brit when we look at the other parts of the will, we see that the testator had declared that he had before given Davis a large estate, and he had also bequeathed in his will portions of this personal fund in trust for hex-sole and separate use, both before and after the clause disposing of the slaves. The entire trust fund is composed of several parts of the personal estate of the testator. From the whole will taken together, we think it is plain that the testator intended that every part of the fund in the hands of the trustee should be held for the
 
 separate úse
 
 óf his daughter and her children. The reason the testator three times mentions his daughter, Mrs. Davis and her children is, that other legatees with her and her children had to be provided for_out of some of the undivided mass of the personal estate.
 

 
 *307
 
 In designating the other legacies and legatees, the writer of the will omitted to repeat the words,
 
 to her sole and separate use,
 
 when the bal anee of the slaves were spoken of in the will. We admit that the law is, that the intention to exclude the husband must not be left to inference, but must be clearly and unequivocally declared. 1 Mad. Rep. 207.
 
 Wills
 
 vs.
 
 Sayers,
 
 4 Mad. Rep.
 
 409
 
 —Massey vs.
 
 Parker,
 
 2 Mil. & K.
 
 181
 
 —Kensington vs.
 
 Dallard,
 
 2 Mil. & K. 188. We are of the opinion that Davis is clearly intended to be excluded from taking any of the testator’s estate. If the meaning be certain to exclude, the court will execute the intention, though the settlor may not have expressed himself in technical language.
 
 Darley
 
 vs.
 
 Darley,
 
 3 Atk.
 
 399
 
 —Stanton
 
 vs. Hall,
 
 2 Russ. &. M. 180. Lewin on Trusts 150. The marital claims will be defeated, if the gift be to the wife for her “ sole and separate, use,”
 
 Parker
 
 vs.
 
 Brooks,
 
 9 Ves. 483, or “to her
 
 sole
 
 use,”
 
 Adamson
 
 vs.
 
 Armitage,
 
 19 Ves. 416, 1 Mad. Rep. 199, 1 Younge 562. We are of the opinion that Edward Davis, in right of his wife, takes nothing under the last will of William Cain, dec’d.
 

 Secondly.
 
 Edward Davis, as administrator of two of his children, who have died since the death of William Cain, claims two ninths of the fund in the hands of the trustee. This claim is now resisted by the defendant. He contends that the court should put such a construction on this will, as, he says,will carry into effect the intention of the testator; and that cannot be done, he says, without permitting Mrs. Davis to take an estate for life to her sole and separate use in the entire fund held in trust, remainder over to her children. His counsel cited
 
 first
 
 Chambers and Atkins, 1 Cond. Eng. Ch. Rep 195. That was a case on the construction of a marriage settlement: the £6,666 stock was in the hands of the trustee, to pay the dividends to the husband during the joint lives of the husband and wife, but in case the husband survived the intended wife, then upon trust to re-assign and transfer the fund to the husband, his executors and administrators to the use and benefit of him the husband, and any child or children of the said intended marriage. The husband did survive, with three children of the marriage. The three
 
 *308
 
 children filed their bill against the father and the trustee to have a declaration of their rights in the trust fund. The ques-don was, did the father and the three children take as joint tenants? The
 
 Vice-Chancellor
 
 said, if that had been the
 
 '
 
 purpose of the settlement, the trustees would not have been directed to transfer the trust fund to the surviving parent, his or her executors or administrators; but would have been directed
 
 to hold upon trust
 
 for the benefit of the surviving parent and children. So in this case William Cain, the trustee, is not directed to transfer, but to
 
 hold
 
 for the equal benefit of Mrs. Davis and her children; and therefore the case cited is not an authority for her to take all for life, remainder to her children. The next case cited was
 
 Morse
 
 vs. Morse,
 
 2
 
 Cond. E. Ch. Rep. 511: testator gave to his daughter and her children £5,000; £3,000 to b,e paid in a year after his death, and £2,000 after the depease of his wife; and he appointed a trustee of those sums for his daughter and her children. The court declared the £5,000 to be a trust for the daughter for life, and after her decease for all the children, whether born in the testator’s lifetime or after her decease. The
 
 Vice-Chancellor
 
 made this decision upon the very peculiar circumstances of the case. It is clear, he said, that the testator did not intend an immediate payment of the two legacies and there would be an inconsistency with respect to them, if the mother did not take life interests; for then different classes of children would become interested in the two portions of the legacy. He therefore put such a construction upon the words of the will as to make all the children partipipators in the legacy, The case before us is very different, none of the legatees are to wait on or for any particular event; they all take their undivided shares of the trust fund immediately on the death of the testator. When a legacy is given to a descriptive class of individuals, as to children in general terms, and no period is appointed for the distribution of it, the legacy is due at the death of the testator. The rights, therefore, of these legatees were finally settled and determined at the death of the testator. Roper on Leg. 48. Wp afeo! opinion that Edward Davis, as administrator of his
 
 *309
 
 two deceased children, is entitled to recover two ninths of the fund in the hands of the trustee William Cain.
 

 Thirdly. The testator bequeaths thus: “I give to my daughter Polly Sutherland the following personal property, to wit, my negro man Plato, twenty five shares .of the capital stock of the State Bank of North Carolina, the sum of $2000 in money, &c.” The testator was the owner of twenty five shares- pf capital stock in that Bank. But on the day of his death, the bank had declared a dividend of its capital stock. The testator’s stock and dividend of stock remained in the Bank untouched by him. He declared before his death that the dividend of the-capital stock was a part of the legacy intended for his daughter Polly Sutherland. The legacy is not specific. If he had said
 
 my
 
 twenty five shares of bank stock, it would have been a specific legacy. 1 Roper 73. But he has not so expressed himself, and mere private opinion or conjecture, that he intended the stock he then held, will be insufficient for the purpose of making the legacy specific. The legacy to Mrs. Sutherland, as to the shares of stock, is a general legacy. Being a general legacy, of course the executor might have been required by the legatee to purchase the prescribed number of shares. As that was not done, the executor must pay the sum they would have cost. As to that the facts are, that the bank was about winding up, and, between the making of the will and death of the testator, had declared dividends of its capital, Upon enquiry we learn that this was not done by passing the dividend to the credit of each stockholder on his account as a customer of the bank and subject to his check as ordinary deposits. But the dividend -remained in bank to the credit of each stockholder on a book of dividends, to be paid only on the receipt of the stockholder and on the production of the certificate of stock, so that the payment might be made to appear, thereon by writing a memorandum thereof on the face of the certificate. Hence the dividend, after it was declared, remained in bank
 
 as a fart of the
 
 stock, until it was actually received by the stockholder. Consequently a share of stock after a declaration of dividend, was as before $100; and although some of the stockholders might have received their dividends, yet as
 
 *310
 
 iong as a single one had not, the share, properly speaking, of the original amount, and the donee of it might require that a
 
 full
 
 share should be bought for her and not a share had been half paid. Now, in this case, there was no payment to the stockholder, Mr. Cain, of his dividends, as it is clear the money was received without his knowledge and against his will, as far as he had any will. Therefore this is to be considered as still part of the stock and a proper measure of the value of the shares, to which Mrs. Sutherland was entitled. It turns out in this case, that she received all the dividends of capital on the shares in her father’s name, except the first. By declaring her entitled to the money drawn by her brother and herself for the first, she will get the value of twenty five full shares, as they stood at her father’s death: and accordingly she is declared to be so entitled, and to that extent the decree must be reversed. The costs to be paid out of the trust fund.
 

 Per Curiam. Decree accordingly.