In this case the plaintiff declared as indorsee of a promissory note against the defendant as indorser. The note and indorsements were as follows:
On demand 13 September next, with interest from 10 December next, we or either of us promise to pay to Joseph Armstrong, or order, $911.28, for value received. Witness our hands and seals, this 13 September, 1819. JOEL ALTMAN, (L. S.) JOHN DUNN, (L. S.) BEN. SAULS, (L. S.)
I indorse the within note to Bennett J. Hallcome, for value received, this 2 October, 1819. JOS. ARMSTRONG.
I assign the within obligation and the above transfer to Henry J. G. Ruffin, or his order, but am not myself bound in case of failure.
October 2, 1819. B. J. HALLCOME.
The defendant relied on two grounds of defense: (1) the want of due diligence in the demand of the makers, and notice to the indorser; and (2) that the indorsement of the defendant was part of an usurious transaction, and therefore void. The facts were as to the indorsement, that the defendant, being the holder of the note, was desirous of raising money, and being informed by his clerk, Hallcome, that the plaintiff was in the habit of buying notes, it was indorsed by the defendant to (412) Hallcome, with a request that he (Hallcome) should sell it to Ruffin as his property. Hallcome accordingly did sell the note to Ruffin for $600, and at the time concealed the fact of his agency and represented the note as his own. In the whole transaction Hallcome (as he stated) was but the agent of the defendant, and paid over to him immediately the money which he received from Ruffin. *Page 230 
On this part of the case Donnell, J., who presided, charged the jury that if they should believe the indorsement by Armstrong, the defendant, was made with a view of raising money by a sale of the note to Ruffin at a discount greater than the legal rate of interest, and that in the whole transaction Hallcome was merely the agent of the defendant Armstrong, having no interest in it himself, and that plaintiff took this note of $911.28 with the general indorsement of the defendant and paying therefor only the sum of $600, then the indorsement of the defendant might be considered as made immediately to the plaintiff Ruffin, and the transaction was usurious, although Ruffin was ignorant of the agency of Hallcome, and believed him to be the real owner of the note.
The jury returned a verdict for the defendant on the ground of usury. A new trial was refused the plaintiff, and judgment rendered, from which there was an appeal.
The act of Assembly which the defendant pleads and insists is violated by the indorsement sued on prohibits the taking, directly or indirectly, for loan of any moneys, wares, merchandises, or commodities whatsoever, above the value of £ 6, by way of discount or interest, for the forbearance of £ 100 for one year; and makes utterly void all bonds, contracts, and assurances whatsoever, made upon usury.
In the construction of this part of the act which sets aside the usurious transaction, the Legislature must be understood to comprehend every (417) device and stratagem intended to evade the law, and although it be not proven in direct terms that there was a loan and a taking of more than legal interest for the forbearance of repayment, yet if the appearance of a loan and forbearance be evaded or concealed by some artifice contrived for that purpose, when in truth it was such, the law will equally avoid it, for as a great judge has observed, "Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute."
The Legislature has fixed the rate of interest on principles of policy, which are at least as powerful now, under the improvement of the State, in all its aspects, government, population, manners, and commerce, as they were nearly a century ago, when the law was passed. It is not less important now than it was then to restrain the power of amassing wealth without industry, and to prevent those who possess *Page 231 
money from sitting idle and fattening on the toil of others. It is not less important to prevent those who desire profit from their money without hazard from receiving larger gains than those who employ it in undertakings attended with risk calculated to encourage industry and to multiply the sources of public prosperity. Nor is it less important to facilitate the means of procuring money on reasonable terms, and thereby to render the lending of it more extensively beneficial. Hence, courts of justice ought to watch with jealousy against any attempt to evade the statute, lest persons under the disguise of ordinary dealings should be allowed to obtain more than legal interest.
I have availed myself of the very full and able discussion which this case has undergone from the counsel on both sides, and of the authorities and illustrations which their industry and learning have furnished the Court; and after all these lights my mind has settled down in the conviction that the transaction now before us, though veiled with more than ordinary precaution and so dexterously contrived as to invest it with a plausible exterior, is in truth and (418) substance a shift to evade the statute.
It is contended, in the first place, that this was a fair sale of the bond, which the plaintiff might lawfully purchase for less than the sum due upon it, and afterwards receive the whole amount with interest. The legality of such a sale cannot be questioned. But the character and substance of this transaction bespeak it to be a loan of money, although the parties constantly speak of a sale, and not a whisper is heard relative to a loan.
But if it had been a sale in truth, Armstrong would have had nothing more to do in the affair, than to receive the price and leave Ruffin to obtain the money as he could from the obligors. The money was to be raised for Armstrong's benefit, and if he had meditated a sale of the bond he would undoubtedly have withheld his indorsement. But by adding that to the bond, he undertook on his part to repay the money which should be raised on it in the event of the obligor's delinquency. This appears to me to be the unequivocal characteristic of a loan, that the money is in all events to be repaid with interest by the borrower himself or out of his funds, except in the cases where a contingency is introduced merely for color and for the purpose of avoiding the statute. A sale of the bond, on the contrary, would have left no recourse to Ruffin, except the liability of the obligors, on whose credit alone the bond would have been purchased, and who would have received no part of the price which he had paid for it.
The force of this conclusion is attempted to be weakened by the circumstance that there was no communication between Armstrong *Page 232 
and Ruffin, and that the latter dealt wholly with Hallcome, who represented himself as owner of the bond. But Hallcome was the agent of Armstrong, and authorized by him to create a privity between himself and any person to whom the bond should be transferred. And the law looks to the (419) substance and essence of the contract, to the plot and structure of the drama, not to the dramatis personae; for upon no other principle could it have been decided (as in Lowe v. Waller, Doug., 735) that a bill of exchange given upon an usurious consideration is void even in the hands of an indorsee for valuable consideration without notice of the usury. Is the plaintiff in this case entitled to the same consideration with an innocent indorsee? Did he not make an usurious agreement with Hallcome, not to be enforced against him, it is true, but against his principal, Armstrong? And I might add another question, Why was Hallcome's indorsement made without recourse upon himself? It is said in the case cited that the most usual form of usury was a pretended sale of goods; and in this State the most usual form, and that by which the statute is most successfully evaded, is a pretended sale of bonds and notes. If the statute can be evaded because the person who received the money represented himself as the owner of the note, when in truth he was not, and he by his indorsement could give a right of recovery against others which could not be had against himself, then nothing would be more easy than the process of committing the offense without incurring the penalty. But if it be, as the sages of the law tell us, a law made "to protect men who act with their eyes open, to protect them against themselves," then ought the construction of the law to be liberal enough to suppress the offense in whatever garb or form it may appear, more especially since the Legislature has studiously avoided particularizing specific modes of usury, because that only led to evasion, but to enact generally that no shift should enable a man to take more than the legal interest upon a loan.
If Hallcome had been in truth the owner of the bond, and had bonafide sold it to Ruffin with Armstrong's indorsement, but without his own, the transaction might have been sustained, for in that case (420) there would have been no stipulation for the repayment of the money by the borrower. But as the case stands, Ruffin's title is vitiated by being derived through Hallcome's indorsement, made on an usurious consideration. Ruffin could not recover from Hallcome, for his indorsement was without recourse; Hallcome could not recover from Armstrong, for his indorsement was without consideration, except the usurious one which was paid to Hallcome for his use; nor could *Page 233 
Ruffin in a suit against Armstrong protect himself by those authorities which say that a note originally good shall not be vitiated by a subsequent indorsement that is usurious (which authorities, however, have been overruled by later cases cited at the bar), because here the suit is not against the obligors, but against the indorser, who indorsed it for the purpose of having it discounted for his own use; his indorsement therefore was a new contract. The opinion of a late distinguished judge in a sister State is so applicable to this view of the question, and conveys my sentiments so much more perspicuously than I could myself express them, that I beg leave to quote his words: "I take it to be clear that if a bill or note be made for the purpose of raising money upon it and it is discounted at a higher premium than the legal rate of interest, and where none of the parties whose names are on it can, as between themselves, maintain a suit on the bill when it becomes mature, provided it had not been discounted, that then such discounting of the bill would be usurious, and the bill would be void." 15 Johns., 56. The same question again occurs in 17 Johns., 17, and is decided the same way. Every position stated in the opinion quoted applies to the facts of this case so exactly that it may be said mutato nomine, de te relatio narratur. Upon the whole I am clearly of opinion that the charge of the judge was perfectly correct, and that there ought not to be a new trial.