LAWRENCE WARD & WIFE v. J. A. SUGG et al.

*Usurious Contract—Illegal and Void Contracts—Innocent Purchaser Before Maturity—Forfeiture of Usurious Interest.*

1. When a note is declared *void* by a statute it is void into whosesoever hands it may come; but when the statute merely declares it *illegal,* the note is good in the hands of an innocent holder.

2. The purpose and effect of section 3836 of *The Code,* which provides that "the taking of a rate of interest greater than is allowed shall be *deemed a forfeiture* of the entire interest," was to make void, *ipso facto,* all agreements for usurious interest; therefore,

3. A note embracing usurious interest is void, as against the maker, in the hands of a purchaser before maturity for value and without notice, to the extent to which the contract is usurious.

4. The remedy of the innocent holder, as to the interest, is against the payee who has endorsed the note to him, and not against the maker who is the victim of an oppression denounced by the statute. The law will not lend its aid to enforce a contract which is "deemed forfeited" by the very fact of making it. If this were otherwise, the protection intended by the statute would be delusive and nugatory.

Action tried at March Term, 1893, of PITT Superior Court, to enjoin a sale threatened to be made under a mortgage, securing, among other notes or bonds, one for $400, described in the pleadings, and to have said note or bond declared usurious and void.

Upon the pleadings the following issues were submitted to the jury:

"1. Was the $400 note executed for an amount agreed to be paid over and above the debts, and for an usurious charge for the use of the money?" Answer: "Yes."

"2. Is the defendant Harrington the *bona fide* owner of the $400 note, due January 1, 1893, and did he acquire the same before maturity in due course of business for value and without notice of any facts impeaching its validity?" Answer: "Yes."

Evidence was introduced by both parties tending to show the correctness of their allegations, and his Honor charged the jury fully upon the matter. There was no exception to the charge or to the testimony as admitted. Upon the verdict the plaintiffs moved for judgment in their favor, and the defendant moved for judgment for the amount of said $400 note, etc. The Court refused to give judgment for the plaintiffs, and gave judgment in favor of defendant Harrington, and the plaintiffs excepted, assigning as error the refusal of the Court to give judgment for plaintiffs, and the giving the judgment for defendants. Plaintiffs appealed.

*Mr. James E. Moore*, for (plaintiffs) appellants.
*Mr. T. J. Jarvis*, for defendants.

CLARK, J.: The jury found that the $400 note in suit was wholly given for an usurious charge for use of money, and that the present holder acquired it before maturity, for value and without notice. The question, whether it is valid in his hands is not an open one in this State. Such note is held to be void into whatever hands it may pass. *Ruffin* v. *Armstrong*, 9 N. C., 411; *Collier* v. *Nevill*, 14 N. C., 30. Such was also the law in England until it was, in some respects, modified by the Act of 58 George III., and is still the law in New York and other States, except where modified by statute. Randolph on Commercial Paper, § 525; 3 Parson Con. (5th Ed.), 117; *Powell* v. *Waters*, 8 Cowen, 669; *Wilkie* v. *Roosefelt*, 3 John Cas , 206; *Solomons* v. *Jones*, 5 Am. Dec., 538; *Oneida* v. *Ontario*, 21 N. Y., 495, cited by SMITH, C. J., in *Rountree* v. *Brinson*, 98 N. C., 107; *Callanan* v. *Shaw*, 24 Iowa, 441.

When the statute makes a note void it is void into whosoever hands it may come, but when the statute merely declares it illegal the note is good in the hands of an innocent holder. *Glenn* v. *Bank*, 70 N. C., 191, 206. Hence it was argued strenuously that the authorities above cited were good under

WARD *v.* SUGG.

our former statute, which made the contract void, but that the present statute merely makes the contract illegal. It does not so seem to us. The former statute (Rev. Code, ch. 114; Rev. Stat., ch. 117), denounced the contract as void as to the whole debt, principal and interest. The present statute (*The Code*, § 3836) makes it void, not as to principal, but as to the interest only. It provides that " the taking, receiving, reserving or charging a rate of interest greater than is allowed    *    *    *    *    *shall be deemed a forfeiture* of the entire interest    *    *    *    *    which has been agreed to be paid," with a further provision that, if such interest has been paid, double the amount can be recovered back by the debtor. The only difference between the two acts is that formerly the whole note was forfeited and of no avail, and now only the stipulation as to the interest is *ipso facto* deemed forfeited and void. But the point has already been adjudicated by this Court.

In two cases this Court—and by most eminent Judges—has expressly held that the words, "deemed a forfeiture," in the Act of 1876–'7 (now *The Code,* § 3836) *makes void* the agreement as to interest. If any attention is to be paid to the doctrine of *stare decisis*, the precedents in our own Court do not leave this open to debate.

In *Bank* v. *Lineberger*, 83 N. C., 454 (on page 458), ASHE, J., quotes this section in full, and says: " The purpose and effect of this statute were not only to *make void* all agreements for usurious interest, but to give a right of action to recover back double the amount after it has been paid." DILLARD, J., in *Moore* v. *Woodward*, 83 N. C., 531 (on page 535), says: " They (the notes there sued on) are both wholly for illegal interest, if the allegations of the answer be true, and, if so, then the sentence of the law is that they are *void;* " and further says: "The device of taking a distinct bond and mortgage for the interest does not take the case out of the operation of the statute." The opinions of such Judges speaking for a Court, consti-

tuted as the bench then was, are surely entitled to be considered the law in this State until changed by legislation. And in *Glenn* v. *Bank*, 70 N. C., 191 (bottom of page 205), RODMAN, J., says: "It is admitted law" that "notes vitiated by an usurious or gaming consideration cannot be enforced in the most innocent hands, *but are always and under all circumstances void.*"

In 1 Daniel Neg. Inst., § 198, it is stated that, where the statute provides that "in an action brought on a contract for payment of money it shall appear that unlawful interest has been taken, the plaintiff shall forfeit threefold the amount of the unlawful interest so taken, it was held to apply to the innocent endorsee of a note, who received it in due course of trade; and, as a general rule, all contracts founded on considerations which embrace an act which the law prohibits under a penalty are void," citing *Kendall* v. *Robertson*, 12 Cush., 156; *Woods* v. *Armstrong*, 54 Ala., 150. In *Kendall* v. *Robertson*, the Massachusetts law had undergone a change similar to ours, and SHAW, C. J., says: "The former law extended the entire forfeiture to any holder of the note, though an innocent endorsee. The natural conclusion is, in the absence of express words changing the operation of the law, that it was the intention of the legislation to extend such partial forfeiture in like manner, and attach it as before to the note, although held by an innocent endorsee without notice. In both cases the intention of the Legislature appears to have been the same, to suppress a mode of lending regarded as dangerous and injurious to society, by attainting the contract, and attaching the penal consequence to the contract itself, whenever set up as a proof of a debt." And at last term of this Court (*Moore* v. *Beaman*, 112 N. C., 558), it is said: "The contract, usury being pleaded, is simply a loan of money, which, in law, bore no interest."

Our own decisions upon our own statute should govern, even though a Court of another jurisdiction upon a

somewhat similar statute had ruled differently. But in fact the case relied on to that effect (*Oates* v. *Bank*, 100 U. S., 239) merely holds that the contract, being not void *in toto*, but only as to the interest, "being legal in part, and vicious in part, the *former* will support a contract of endorsement." But here the note is solely for usury and, being wholly vicious, the case cited is authority against its validity in the hands of the assignee.

The note for the usurious interest being in the hands of assignee, he and not the maker must suffer. The law regards the maker not *as in pari delicto* with the payee but as the victim of an oppression which the law has denounced and prohibits under penalty. *Bank* v. *Lutterloh*, 81 N. C., 144. If, by passing the note off before maturity and for value, the endorsee may recover on it, the statute is useless, as the protection intended and the penalty and prohibition are alike rendered nugatory. The victim would have no recourse but to suffer in silence. The usury would be collected in spite of the law which had declared the " entire interest forfeited " *ab initio*, by the fact of " charging or reserving" it. On the other hand, the innocent endorsee has his recourse upon the payee who has endorsed the note to him (Daniel on Neg. Inst., § 807), a recourse which would more surely protect him, being against the party who has money to loan not to borrow. At any rate, the fact that the endorsee's sole remedy, as to the interest, is against the payee and endorser, not against the maker, will cause such lenders to be more chary of shouldering off upon innocent parties the collection of their usurious contracts.

The only case in our Reports that seems to mitigate against the otherwise uniform tenor of our decisions on this subject is *Coor* v. *Spicer*, 65 N. C., 401, which held that a mortgage given to secure a usurious bond might be enforced in the hands of an innocent purchaser for value. The case recognizes the general rule, but takes mortgages out of it upon

the supposed wording of the statute. Rev. Code, ch. 50 § 5 (now *The Code*, § 1549). Aside from the fact that this is held expressly otherwise in the later case of *Moore* v. *Woodward*, 83 N. C., 531, an examination of section 1549 will show that *Coor* v. *Spicer* was a palpable inadvertence. The statute cited .(*The Code*, § 1549) in fact does not purport to protect the innocent holder of a mortgage note which is tainted with usury, but the " purchaser of the estate or property " at sale under the mortgage, who buys without notice of the usurious taint in the debt secured. It would be a fraud for the mortgagor to stand by and let him purchase without giving him notice, but the maker can give no notice usually to the assignee of the note. There is a broad distinction which runs through all the cases everywhere between contracts upon an illegal consideration as to which, the parties being *in pari delicto*, the Courts will aid neither party, but will protect the note in the hands of a holder for value without notice, and a contract which, in whole or in part, is declared void or forfeited in its inception which can acquire no validity by being passed on to other hands. *Henderson* v. *Shannon*, 12 N. C., 147; *Glenn* v. *Bank, supra*. As to usurious contracts, the law regards the maker, not as *in pari delicto*, but as acting "in chains" (1 Story Eq. Juris., § 302), and to permit his contract, which is deemed exacted under duress, to come under the general rule in favor of innocent holders for value of commercial paper, would be to nullify the protecting statute. The recourse of the holder is against the payee and endorser, who is more likely by far to be able to respond than the maker.

The statute makes the "taking, receiving, reserving *or* charging usury, ' when knowingly done,' *i. e.*, intentionly done, and not by a mere error of calculation, a *forfeiture* (not merely forfeitable) of the entire interest which the note carries with it, '*or* which has been agreed to be paid thereon.'" The note

in this case falls exactly within the evil denounced in the last clause. It is a written promise to pay the usury reserved or charged on the note, and such charging or reserving is *ipso facto* a forfeiture which attaches either by the taking, receiving, reserving or charging, as the law-makers evidently intended to prevent and head off all casuistry for which this class of law-breakers have, in all times, been specially noted, and to carry out the legislative intent of *bona fide* protecting the public, not nominally, but in fact, from evasions of this law. But if in truth the forfeiture was limited to the "knowingly receiving," the holder of this note certainly knows now, and doubtless did before suit brought, that this note was given for usury "agreed to be paid," and his receiving it would, *eo instanti*, work a forfeiture. Besides, if the maker should have voluntarily paid this note, the receiver of such payment knowing it was for usury, the statute gives the person, "by whom it was paid, or his legal representative," an action to recover back twice the amount. *Cui bono*, then, shall the debtor be compelled by law to pay the usurious note, when, instantly, he can recover back double the sum of the party to whom he pays it, as a punishment for knowingly receiving it. Such multiplicity of actions was not tolerated under the old practice, and certainly will not be under the present simpler and more practical system of procedure.

*Bank* v. *Lutterloh*, 81 N. C., was decided under the Act of 1866, and, to cure the defect in that act, the wording of the present statute is made explicit and gives the action to recover back. Under the Act of 1866 there was no forfeiture, as now, but simply interest could not be collected. While the "charging, reserving," etc., is now a forfeiture of the contract as to all interest *ab initio*, the recovery of double the sum paid is necessarily from the party to whom it is paid, for the language is "may recover *back*" double the sum paid, which can only be from the party receiving the money.

With the policy of the law-making power the Courts have nothing to do further than as it may throw light upon the meaning of the statute by considering the evil to be remedied. That is thus considered by TAYLOR, C. J., in *Ruffin* v. *Armstrong*, 9 N. C., 411, 416: "It is not less important *now* than it was then to restrain the power of amassing wealth without industry, and to prevent those who possess money from sitting idle and fattening on the toil of others. It is not less important to prevent those who desire profit from their money without hazard from receiving larger gains than those who employ it in undertakings attended with risk, calculated to encourage industry and to multiply the sources of public prosperity. Nor is it less important to facilitate the means of procuring money on reasonable terms, and thereby to render the lending of it more extensively beneficial."

In a matter so capable of oppression as the lending of money, the Legislature has deemed it wise to regulate the limit of what is a reasonable exaction for its use, since all interest is the creation of statute. *Beaman* v. *Moore, supra.* As to lenders upon a lawful rate of interest, the Legislature has looked upon them with a favorable eye and of late years has raised the limit from six to eight per cent. But there is nothing in the action of the Legislature, nor in the circumstances of the day, which indicates that this is a propitious time to relax the restrictions placed heretofore upon the illegal exactions of those who would use their money contrary to law, and yet call upon the law to aid them, directly or indirectly, to secure their unlawful gains.

Error.

BURWELL, J. (dissenting): I cannot agree to the conclusions of the Court in this appeal, and deem it proper to give the grounds of my dissent. By the terms of the statute which was in force in this State before the Act of 1866, all contracts founded upon an usurious consideration were

declared to be *void*, and according to all the authorities, promissory notes thus expressly avoided are void in the hands of endorsees for value without notice.

By the Act of 1866 the legal rate was fixed at 6. per cent., with a proviso allowing 8 per cent. to be charged for money loaned, if the contract was in writing, and signed by the party to be charged; and it was therein enacted that if a greater than the legal rate was charged, the interest should not be recoverable. This law, as was said by Justice DILLARD, in *Bank* v. *Lutterloh*, 81 N. C., 144, introduced a new theory. It was an expression of the popular will. It did not declare the contract void in whole or in part. It did declare that the contract, so far as it related to interest, was not enforcible in the Courts, that it could not be collected by law, and in effect it enacted that so much of the contract as concerned the rate of interest was *void*, the word "void" being used here as it is in *Moore* v. *Woodward*, 83 N. C., 531.

Speaking accurately, the contract for interest in excess of the *legal* rate was made by that act, not void, but *illegal*.

This act remained in force until 1875, when the Legislature adopted a law which distinctly declared "void" all contracts, both as to principal and interest, if a greater than the legal rate was charged. When this statute went into effect, what are called usurious contracts, and all notes, bonds, etc., founded on such contracts, were not only illegal, but *void*.

At January Term, 1874, of this Court, the case of *Glenn* v. *Bank* was decided (70 N. C., 191), and Justice RODMAN said in his opinion filed in that cause: "If the statute declares a security void, it is void in whosesoever hands it may come. If, however, a negotiable security be founded on an illegal consideration (and it is immaterial whether it be illegal at common law or by statute), and no statute says it shall be void, the security is good in the hands of an innocent holder, or of one claiming through such a holder. The case of *Hay* v. *Azling*, 16 Ad. & Ellis, 423, is a notable illustration of the

32

difference. Gaming securities were declared void by 9 Anne, ch. 14, § 1, and it was held that they were void in the hands of a *bona fide* innocent endorsee. The act of 5 and 6 William, ch. 41, § 1, modified the act of Anne, and declared they should be illegal. The Court held that after that act they could be recovered on by an innocent holder."

It is to be presumed that the Act of 1874–'5 enacted as it was one year after that announcement of the rule of law, was framed by men acquainted with that decision, and that it was then provided that all usurious contracts should be *void*, in order that they might be invalid in whosesoever hands they might come.

In 1876–'7 another change was made in the law, and the statute then enacted is in force at this time. That act nowhere, *in totidem verbis*, declares *void* a contract for interest in excess of the legal rate. It is to be presumed that this enactment was also framed in distinct recognition of the rule laid down by the learned Justice in *Glenn* v. *Bank, supra,* and I think much significance is to be attached to the fact that, with this rule thus brought to its attention, the Legislature repealed a law which declared all such contracts *void*, and adopted one which omitted to so declare them. And here it may be well to note the often inaccurate, or, rather, misleading use of the word "void" in statutes and reports. PARKER, C. J., in *Somes* v. *Brewer*, 2 Pick., 183, says of the words "void and voidable," that they "have not always been used with nice discrimination. Indeed, in some books there is a great want of precision in the use of them." And he adds that; for the purposes of the case he was considering, "the term 'void' will be used to express that which is in its very creation wholly without effect, an absolute nullity." In *Baucom* v. *Smith*, 66 N. C., 538, PEARSON, C. J., said of the bond there in suit, that it "was void in the hands of the obligee for the illegality of consideration;" and then he adds: "Had the bond been assigned before it was due, the assignee for val-

uable consideration, and without notice, could have main-
tained an action to enforce payment. This is settled. *Hen-
derson* v. *Shannon*, 1 Dev., 147." Numerous instances of this
use of the word "void" could easily be cited from our
reports. Justice READE makes similar use of the word in
*Coor* v. *Spicer*, 65 N. C., 401. What he there says may well
be quoted here: "Except as otherwise provided by statute, a
negotiable instrument *void* as between the original parties, by
reason of any illegality in the consideration, was neverthe-
less good in the hands of an endorsee for value and without
notice."

If it be said that the effect of the provision of the Act of
1876–'77 is to make *void* all contracts entered into contrary
to its provisions, it is to be replied that, in the interest of
commerce and trade, *bona fide* purchasers of commercial
paper are favorites of the law of every enlightened nation,
and, at this day at least, it is not allowable to destroy, *by an
inference*, negotiable instruments in the hands of such pur-
chasers. The rule is, as I understand, that if the maker of
a negotiable note contests the right of one who has acquired
it by endorsement, for value, before maturity and without
notice of any defence, to recover of him the amount of the
note, he must be able to show a statute that, *in totidem verbis*,
declares the note to be *void*, or one that makes the contract
*illegal*, and, expressly or by *necessary* implication, declares that
this *illegality* shall avoid the contract and all securities given
in fulfilment of such illegal contract, into whosesoever hands
they may come, and thus render them unenforcible in the
Courts. Story on Prom. Notes, § 192; *Converse* v. *Foster*, 32
Vt., 828. In sections 807 and 808 of Daniel on Neg. Inst.,
it is said that "in many localities negotiable instruments
executed upon gaming or usurious considerations are upon
the same footing as those executed for other illegal considera-
tions—that is, void between the parties, but valid in the
hands of a *bona fide* holder"; * * * and that "where

the instrument was executed upon an illegal consideration, especially if illegal by statute (but not absolutely avoiding the instrument), it throws upon the holder the burden of proving *bona fide* ownership for value, * * * and in all cases where the statute does not declare the instrument void, *bona fide* ownership for value being proved, the holder is entitled to recover." The reason of this rule is well stated in *Bank* v. *Prather*, 12 Ohio St. Rep., 497, as follows: "The cardinal principle of the commercial law which protects commercial paper, regular upon its face and negotiated before its maturity, cannot be otherwise vindicated; and this is of much more importance than that one who has received the benefits of the paper should be compelled to perform an engagement which he voluntarily made." In *Converse* v. *Foster, supra,* the rule, as I conceive it to be, is thus expressed by POLAND, J.: "The English statutes against usury and gaming not only impose a penalty for such illegal acts, but expressly declare that all notes, bills, bonds and other securities given for such illegal consideration shall be *utterly void.* All the cases that have been cited, and all that can be, so far as we know, both English and American, upon this subject, turn upon this very distinction and difference between the statutes. In those cases in which the Legislature has declared that the illegality of the contract or consideration shall make the security, whether bill or note, *void*, the defendant may insist on such illegality, though the plaintiff, or some other party between him and the defendant, took the bill or note *bona fide* and gave a valuable consideration for it. But, unless it has been so expressly declared by the Legislature, illegality of consideration will be no defence in an action at the suit of a *bona fide* holder for value without notice of the illegality." A recognition of the principle thus well expressed may be seen, I think, in the chapters of the Revised Code that relate to usury and gaming, and in the Act of 1874–'75, above referred to.

In *Moore* v. *Woodward, supra,* the learned ·Justice who delivered the opinion says: "Under our present statute, while the contract is valid as to the principal, a stipulation for usurious interest secured by a separate bond and mortgage therefor ought, *as between the parties at least,* on plea of the illegality, to bar the direct collection of the same by an action therefor." In a former part of the opinion he had remarked that, under the provision of the Revised Code, an usurious contract was void, "in whosesoever hands it might come." His subsequent statement, quoted above, seems to indicate that he thought that contracts made in contravention of the provision of the present law, which he was discussing, were illegal and were void as between the parties, but, being only illegal, were not void in whosesoever hands they might come—evidently having in mind the rule laid down by Justice ROD-MAN in *Glenn* v. *Bank, supra.*

The Act of 1876-'77 (*The Code,* § 3336), which we are construing, is, in all essential particulars, copied from the National Banking Act (Revised Statutes, § 5198). The words are almost identical. The forfeitures and penalties are the same. The Supreme Court of the United States has held, in *Oates* v. *Bank,* 100 U. S., 239, that that act "does not declare the contract under which the usurious interest is paid to be *void,*" and it is to be noted that this language is used by that Court in drawing a contrast between the act it was construing and the law of Maryland, which did declare all usurious contracts *void,* and therefore not enforcible even in the hands of *bona fide* endorsees. We therefore have an adjudication of the point under discussion from the highest Court.

In conclusion, our statute does not expressly make void notes given for an usurious consideration. It is not a *necessary* inference from its provisions that the Legislature intended they should be so. I think, therefore, that, though the note here in suit is founded upon an illegal consideration, it is recoverable in the hands of a *bona fide* holder for value and without notice.