The plaintiffs, beneficiary and trustee under a junior mortgage or deed of trust, brought this action to restrain the foreclosure of a senior mortgage having a lien on the same lands, and to have ascertained the amount due on the note secured by the senior mortgage, to the end that it might be paid in protection of plaintiffs' security, and plaintiffs subrogated to the rights of the senior mortgagee.
The controversy as to the amount due arises on the following facts and contentions:
On 15 April, 1927, John M. Pinnix and Madye Leak Pinnix borrowed $10,000 from the Carolina Mortgage Company, and secured the note representing the loan by a deed of trust on certain real property in Kernersville, Forsyth County. The plaintiffs allege that $500.00 of the principal was retained by the Mortgage Company as a bonus or condition of making the loan, or an additional charge of making the loan, and that the Mortgage Company made other unlawful and usurious charges in addition to the lawful six per cent. *Page 762 
Subsequently, on 1 July, 1931, the said John M. Pinnix and Madye Leak Pinnix executed to the Carolina Mortgage Company a new note secured on the same property, and representing the balance of indebtedness, due 1 July, 1936. The plaintiffs allege that the execution of this note and mortgage securing it was not voluntary, but made under circumstances of oppression and duress which made it impossible for the makers to assert their rights with regard to the usury; that the note and mortgage include and bring forward the usury involved in the first transaction, with additional usury of its own.
On 27 June, 1932, the said John M. Pinnix and Madye Leak Pinnix obtained a loan from W. M. Pinnix and made a note to him securing the same on the real estate theretofore conveyed to the Carolina Mortgage Company in security for the loan above mentioned.
The defendant Keswick Corporation, as substitute trustee, advertised and sold the property under the second deed of trust above described on 20 May, 1938, and the Central Investment Company became the highest bidder. On 30 May plaintiffs brought this action, setting up in their pleading substantially the fact and contentions above set out and demanding that the legal amount of the debt be ascertained, with forfeiture of all interest, which amount they stand ready to pay.
The defendants deny usury, aver that the second note was made voluntarily and contains no usurious consideration, and plead the statute of limitations — C. S., 442 (3) — against any claim of usury the plaintiffs may assert.
On the hearing in the county court, the injunction was continued to the hearing, and on appeal of defendants to the Superior Court of Forsyth County the order of the county court was affirmed. From this judgment defendants appealed.
1. The plaintiffs, representing a junior mortgage or deed of trust, brought this suit to restrain the foreclosure of a senior mortgage or deed of trust upon the same land until the amount due on the senior mortgage might be ascertained and plaintiffs given an opportunity to pay said amount and be subrogated to the rights of the senior mortgagee. The claim that the note secured by the senior mortgage represents a considerable amount of usury, and demand that the senior claim shall be purged of usury, all interest thereon forfeited, and the amount claimed by defendants reduced to that extend.
The defendants, pointing out that the plaintiffs do not contend for any reduction of defendants' claim except for the aforementioned usury and *Page 763 
consequent forfeiture of all interest, say that the item in controversy is thus segregated and relates to usury only, and since they have pleaded the statute of limitations, which upon the record they conceive to be applicable, the matter has become one of law to be settled without a jury, and the court below should have dissolved the injunction.
The statute pleaded became effective 1 April, 1931, and reads as follows:
"442 (3). The forfeiture of all interest for usury: Provided, however, this section shall not apply to the counties of Cherokee and Clay."
The defendants' note became due 1 July, 1936. This action was brought 30 May, 1938.
There is considerable controversy between counsel as to the beginning point or time when the statute begins to run, if applicable at all. It is conceded that difference in the application of the statute might follow accordingly as we might adopt the theory that the junior mortgagee stood in the shoes of the debtor with reference to his right to plead usury or, on the other hand, might plead it as a right independent from that of the debtor.
We might say here that if we adopt the first view, it would be easy to arrive at the conclusion that the action is barred, since a comparison of the dates above set out shows that the debtor's cause of action, if he had any, accrued more than two years before this action was brought; if we adopt the latter view, it would reasonably follow that the plaintiffs' cause of action, if they had any, is not barred. The had no cause of action until they came into relation with the subject by taking the second mortgage; but defendants' mortgage was not then due and did not become due until 1 July, 1936. Since usury does not accelerate the payment of the principal, plaintiffs could not have compelled the defendants to accept payment before their note became due; and we do not understand how the plaintiffs could have prosecuted an action, the mere purpose of which would be to declare a status and, so to speak, put it on ice, so that plaintiffs might use it when occasion arose. We might, therefore, arrive at the conclusion that plaintiffs' cause of action is not barred.
But we do not think it advisable to pursue an academic discussion of this question, since we think the junior mortgagee has heretofore been permitted to exercise a privilege to which he is not in equity entitled. It seems clear, too, that much of the difficulty in applying the statute of limitations invoked in this case arises from the confusion thus produced.
2. The right of a junior mortgagee to resort to injunction to stay a foreclosure proceeding under a senior mortgage having a lien upon the same land, until a bona fide controversy as to the amount due on the *Page 764 
senior mortgage has been ascertained, is not questioned. When that controversy is narrowed down to a question of usury in the senior mortgage debt, the courts which have passed upon usury statutes similar to ours are not agreed as to whether the junior mortgagee should be let in at all to raise the question of usury.
We think on examination of the authorities, our own decisions, as well as those of other jurisdictions having similar laws, will lead to the conclusion that our present discrimination between the mortgagor and the junior mortgagee with respect to the conditions under which they may be let in to raise the question of usury is not sufficiently supported.
Basing their reasoning on the ground that the usury laws are enacted for the benefit of the borrower and are personal to him, and those in privity with him, a great number of jurisdictions refuse to allow the junior mortgagee to raise the question at all; others, while permitting this question to be raised by the junior mortgagee upon other grounds, notably that of public policy, do not give him the benefit of the statute creating penalties and forfeitures, but permit him to come in only upon the tender of the legal amount due, with the lawful rate of interest. Our own courts, while demanding of the mortgagor, and those in privity with him, a tender of the principal amount due, with six per cent interest thereon as a condition precedent of raising the question of usury, permit the junior mortgagee to attack the senior mortgage without any tender, and secure a forfeiture of all interest. Broadhurst v. Brooks, 184 N.C. 123,113 S.E. 576.
It is not contended anywhere that there is any privity between the junior mortgagee and the borrower or mortgagor in the senior mortgage; but an examination of the North Carolina authorities will show that this rule is seated upon the theory that C. S., 2306, which in most other jurisdictions is considered to raise a right personal to the borrower, makes the promise to pay interest in a note tainted with usury absolutely void for all purposes and incapable of any effect anywhere it is encountered. Ward v. Sugg, 113 N.C. 489, 18 S.E. 717; Ripple v.Mortgage Corp., 193 N.C. 424, 137 S.E. 156; Bank v. Jones, 205 N.C. 648,650, 172 S.E. 185. It must be said that the two last cited cases merely follow Ward v. Sugg, supra, as a precedent; and none of them deal with the rights of the junior mortgagee, but the theory on which Ward v.Sugg, supra, was decided is the sole support for the privilege accorded the junior mortgagee in Broadhurst v. Brooks, supra, of demanding forfeiture of all interest.
The premise to this conclusion that C. S., 2306, makes any promise to pay money utterly and unconditionally void and of no effect under any circumstances where the transaction is tainted with usury is not tenable; and the position that any part of C. S., 2306, can be borrowed *Page 765 
to aid the junior mortgagee in the matter of usury in a contract to which he is a stranger is so thoroughly against the weight of authority as to challenge the further usefulness and justice of the rule.
At the threshold of this discussion we must remember that our statute, C. S., 2306, is copied from the National Banking Act (with additions immaterial to this consideration), and has gone into the laws of very many states of the Union in exactly the same form. Its application to the junior mortgagee in Broadhurst v. Brooks, supra, and our own cases following this line of reasoning, is somewhat peculiar to our State.
The question presented in Ward v. Sugg, supra; Ripple v. Mortgage Corp.,supra, and Pugh v. Scarboro, 200 N.C. 59, at p. 62, 156 S.E. 149, was whether the question of usury in a note might be raised against an innocent holder without notice, and these cases hold that this can be done. As stated, the conclusion rests upon an elaborate discussion in Ward v. Sugg,supra, in which the decision by a divided Court was based upon the theory that the usury made the promise to pay interest absolutely and unconditionally void and of no effect for any purpose wherever encountered. Since the protection afforded an innocent purchaser of a note, who has no notice of a defect therein, is an equitable provision of law, and the holder has a better security against the payee and endorser — Ward v.Sugg, supra — it is obvious that the decision of such a matter might have rested upon the ground of superior equity; but we are not here interested in that question. The point is that the holding in Ward v. Sugg,supra, must have entered into and became the dominant consideration inBroadhurst v. Brooks, supra, and similar cases, since therein the right of the junior mortgagee to demand a forfeiture of all interest was based upon the provisions of C. S., 2306. Broadhurst v. Brooks, supra.
The doctrine was repudiated in Ector v. Osborne, 179 N.C. 667, 670,103 S.E. 388, and a vigorous dissent defending the principle was filed byClark, C. J., who later wrote the short opinion in Broadhurst v. Brooks,supra.
To get at the root of the matter, we turn now to an analysis of Ward v.Sugg, supra, where the theory seems to have originated.
In this case, speaking of a note given for usurious interest, JusticeClark, speaking for the Court, says:
"The question whether it is valid in his hands is not an open one in this State. Such note is held to be void into whatever hands it may pass.Ruffin v. Armstrong, 9 N.C. 411; Collier v. Nevill, 14 N.C. 30." (Such was, of course, the law by statute at that time, but not in 1893, when this opinion was rendered.)
"When the statute makes a note void it is void into whosesoever hands it may come, but when the statute merely declares it illegal the note is *Page 766 
good in the hands of an innocent holder. Glenn v. Bank, 70 N.C. 191, 206. Hence, it was argued strenuously that the authorities above cited were good under our former statute, which made the contract void, but that the present statute merely makes the contract illegal. It does not seem so to us. The former statute (Rev. Code, ch. 114; Rev. Stat., ch. 117) denounced the contract as void as to the whole debt, principal and interest. The present statute (The Code, sec. 3836) makes it void, not as to principal, but as to the interest only. It provides that `the taking, receiving, reserving or charging a rate of interest greater than he is allowed . . .shall be deemed a forfeiture of the entire interest . . . which has been agreed to be paid,' with a further provision that, if such interest has been paid, double the amount can be recovered back by the debtor. The only difference between the two acts is that formerly the whole note wasforfeited and of no avail, and now only the stipulation as to the interest is ipso facto deemed forfeited and void.
"In two cases this Court — and by most eminent judges — has expressly held that the words, `deemed a forfeiture,' in the Act of 1876-7 (now The Code, sec. 3836) makes void the agreement as to interest. If any attention is to be paid to the doctrine of stare decisis, the precedents in our own Court do not leave this open to debate."
In Ector v. Osborne, supra, a different opinion was reached as to the effect of C. S., 2306, and a vigorous dissent along the same line was made by the writer of the foregoing opinion.
Close observation of the above quotation from Ward v. Sugg, supra, will show that the opinion twice interchanges the term "void" with the expression "deemed a forfeiture," as if they were synonymous.
We can reach no intelligent result by a mere troweling together of terms to which we have arbitrarily assigned the meaning most suitable to our purpose. Cole v. Fibre Co., 200 N.C. 484, 489. The conclusion is forced when, in an endeavor to support it, we must resort to the spirit of the law when the letter fails, to the letter when the spirit is weak, and to precedent when both fail.
Ector v. Osborne, supra, as in the case as bar, involved an action for the recovery of a note representing usurious interest. It represents a later pronouncement by the Court and is directly contrary to the holding inWard v. Sugg, supra, although the later case is followed in Ripple v.Mortgage Corp., supra, and Pugh v. Scarboro, supra. These merely follow precedent, and it is worthy of note that in each of them the party pleading usury was the maker of the note, and the party demanding the enforcement of the note was, of course, a privy of the payee. The decisions need not have been placed upon the ground that the forfeiture of the statute rendered the promise utterly void anywhere it was encountered *Page 767 
— a position directly contrary to Ector v. Osborne, supra, and entirely repudiated in Ghormley v. Hyatt, 208 N.C. 478, 181 S.E. 242.
The discussion in Ward v. Sugg, supra, hinged on the difference between "void" and "voidable" as applied to the provision in C. S., 2306, forfeiting interest. The opinion arguendo seems to conceive that if the statute makes the interest or promise to pay it "void," this provision is available to anybody, anywhere, at any time, and on any occasion — that the promise is utterly ineffective for any purpose; and while the word "void" is not mentioned anywhere at all in the statute, it is made the subject of sharp controversy between the main and dissenting opinions. The word "void" is notoriously one of the trickiest in legal terminology, and it would be rash to assign to it any intrinsic meaning apart from a consideration, not merely from its context, but the whole subject which has called it into use. It seldom implies a present nullity, but most often prospectively refers to a final condition which exists after the invalidity is disclosed and judicially declared — in the sense of "voidable." But we need not discuss the term further, since it does not appear in the statute at all and the term used there has an entirely different significance. We merely discuss it because it was, as we think, one of the factors leading to the peculiar result in Broadhurst v. Brooks, supra.
A note promising to pay money, regular upon its face and meeting the requirements of the Negotiable Instruments Law, and not containing a patent defect, is not void because of the taint of usury, but is only subject to the penalties and forfeitures of the statute, one of which is the forfeiture of all interest, which takes place when usury is pleaded and the plea supported by proof. It has been repeatedly stated that in order to be available the statute must be pleaded. Ector v. Osborne, supra; Dixon v.Osborne, 204 N.C. 480, 168 S.E. 683.
We shall not discuss the propriety of permitting the junior mortgagee to raise the question of usury in a senior mortgage. Perhaps section 2305, fixing the legal rate of interest and providing that no more shall be taken, is sufficient, since it is really the statute which declares the policy of the State with regard to usury. Polikoff v. Service Co.,205 N.C. 631, 172 S.E. 536; Hackney v. Hood, Comr., 203 N.C. 486,166 S.E. 323.
"Since usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders, the defense of usury is purely personal to the borrower, or those in privity with him, and is not available to a stranger to the transaction. This is true whether the statutes declare the contract void in whole or only to the extent of the usury, or whether a penalty is given for the taking." 66 C. J., page 251; see authorities under note 90. *Page 768 
"The policy of the Legislature in adopting statutes of usury is the protection of borrowers against the oppressive exactions of lenders. It does not tend to the promotion of that policy that person other than the victims of the usury should have the benefit of such statutes, and accordingly, as a general rule, usury is considered to be a ground of relief available only to the debtor or to the one in legal privity with him.
"To allow a stranger to interpose the defense of usury to a contract with which the maker is in all respects satisfied, and by the terms of which he desires to abide, and upon which he is liable for a deficiency judgment, would be exceedingly unfair to a debtor who desires to perform his contract, because he made it, or because he may deem it to be advantageous so to do. So long as the inclination to profit from man's adversity or necessity exists, a law limiting the rate of interest that the lender may charge the borrower for the use of money will continue to be wholesome and beneficial to society; but common experience suggests many instances in which the borrower may not desire to invoke the protection of the law enacted for his especial benefit." 27 R. C. L., page 281; StuartCourt Realty Corp. v. Gillespie, 59 A.L.R., page 342.
Referring to the minority rule admitting junior mortgagees to plead usury and explain its rationale, where the usurious excess is void, we find in 27 R. C. L., page 284, the following:
"The just rights of the senior creditor are protected, as he can stillrecover his debt and as high a rate of interest as in the judgment of thelaw he ought to demand, and therefore there can be little, if any, wrong to him in allowing a junior creditor to protect the fund in which he is interested for the payment of his debts, by making the defense of usury." See note to Stuart Court Realty Corp. v. Gillespie, supra; Carter v.Dennison (1848), 7 Gill. (Md.), 157.
"A borrower is not, however, compelled to plead usury, and as thedefense is personal to him, it may be waived." "The statutes of usury beingenacted for the benefit of the borrower, he is at liberty to waive his right to claim such benefit and pay his usurious debt, if he sees fit to do so." Ector v. Osborne, supra. Approved in Ghormley v. Hyatt, supra; Dixonv. Osborne, 204 N. c., 480, 485, 168 S.E. 683. In all these opinions the reference is to C. S., 2306.
It results from a just interpretation of the legislation that the right to complain is a personal one belonging to the borrower and his representatives; no other party is entitled to relief, defensive or affirmative." Pomeroy Equity Jurisprudence, 4th Ed., section 937. See authorities cited.
Further confusion and contradictory statements as to the principles upon which a court of equity will administer relief in usury cases both *Page 769 
as to the borrower and those in privity with him, and as to the junior mortgagee who pleads usury, should not continue.
3. Apart from these considerations, there is a want of quality at the threshold of equity as between the borrower, who as actor seeks to raise the question of usury in a mortgage debt, and the junior mortgagee who comes into equity for the same purpose. This inequality between the two at the threshold of equity is sharply illustrated in Broadhurst v. Brooks,supra, in which the mortgagor or borrower is required to tender the principle amount due, with six per cent interest, under the maxim: "He who seeks equity must do equity," and the junior mortgagee, a total stranger to the usurious contract and seeking the same remedy through equity, need make no tender and may require a forfeiture of all interest. Wilson v. TrustCo., 200 N.C. 788, 158 S.E. 479. The more favorable position accorded the junior mortgagee is stated in Wilson v. Trust Co., supra, to arise from the fact that he is under no legal or moral obligation to pay the debt; but surely this is no good reason when the junior mortgagee not only elects to pay the debt for his own security, but demands subrogation against the borrower. Both are seeking equity by the same route, and however the junior mortgagee may be related to the usury laws, the same equitable principle should be applied to him. Conceding that there is some discretion in the equity court as to the conditions upon which persons may seek equity, it is not equity at all unless the rule applies uniformly to all comers.
The discrimination cannot be explained by reference to any rule of equity. It cannot rest upon the principle that the borrower does not come into court with clean heads because of his participation in the usurious contract, since he is not in pari delicto. Pomeroy Equity Jurisprudence, 4th Ed., section 937; Bank v. Lutterloh, 81 N.C. 144. If actor, "the doors of the court will be shut against him in limine." Pomeroy Equity Jurisprudence, 4th Ed., section 398. And the Court cannot take the middle ground that the mortgagor is to be penalized pro tanto and then admitted, without inventing a new legal gadget. The maxim, "He who seeks equity must do equity," expresses a very different principle, broader in its scope, and considered "the source of every doctrine and rule of equity jurisdiction." Pomeroy. No man comes into court so clean-handed as to escape the maxim, "He who seeks equity must do equity."
This is no equitable basis for a discrimination against the mortgagor and in favor of the junior mortgagee in this proceeding. Coming into the situation by the narrowest sort of a margin and against well reasoned authority, the junior mortgagee, when pleading usury in a senior mortgage, should be held to the same rule, at least, which applies to the borrower, who raises the same question in the same way. *Page 770 
We, therefore, conclude that former rulings of the court holding to the contrary should be revised, and that the junior mortgagee seeking equitable relief against foreclosure of a senior mortgage because of usury should be required to tender, or at least, offer to pay, the principal sum due, with legal interest thereon at six per cent.
Since these plaintiffs began their action in good faith, under the rule laid down in Broadhurst v. Brooks, supra, and other cases following this precedent, they well not be required to make tender; but they will be permitted only to purge the debt of its usury and have it stripped down to the principal sum advanced, with legal interest thereon at the rate of six per cent.
This, however, does not conclude the controversy between the parties, but only modifies the extent of the possible relief; and the judgment of the court below continuing the injunction to the hearing is
Affirmed.