(194) The plaintiff by his bill sought to enforce the specific execution of a contract for the purchase of a house and lot from the defendant. The contract was alleged to have been made with an agent of the defendant, in the following terms expressed in writing: "State *Page 139 
of North Carolina, Lenoir County. This agreement, entered into between me, Amos Harvey, of the first part, and John R. Phillips, of the second part, all of the county of Lenoir, witnesseth, for and in the consideration of the sum of twenty-five hundred dollars to me in hand paid, I, the said Harvey, do agree for Mrs. Hooker to make a deed for her house and lot north of Kinston, to the said John R. Phillips. This 13 December, 1862. Signed, sealed in presence of L. H. Alredge. Amos Harvey." The bill described the house and lot as being situate formerly near, and now within the corporate limits of the town of Kinston, and set out particularly the metes and bounds of it. The defendant, by her answer, admitted that she did appoint Amos Harvey as her agent to sell the house and lot described in the bill, but she denied that the written contract therein set forth is binding upon her, because it purported to be made by him on his own behalf, and was therefore obligatory only upon him. She admitted, however, that the plaintiff paid the purchase money to her agent, and that he paid it over to her, but she alleged that the payment was made in Confederate treasury notes. Nothing was said either in the bill or answer as to the value of the house and lot, or as to the adequacy of the price paid for it. The defendant admitted that she had no other house and lot in the county of Lenoir on 13 December, 1862, the date of the contract above specified, and that soon after that time the plaintiff entered into possession of the premises, and has been occupying them ever since.
The defendant objects to the relief sought by the plaintiff upon several grounds, which we now proceed to consider:
1. The first objection is, that the contract was that of the agent only, and that the defendant was therefore not bound by it. We think otherwise. It is true that the note or memorandum of the contract does not expressly state that Amos Harvey was the agent of the defendant, or that he was acting as her agent, but it does sufficiently appear by implication that he was so acting, for he says, "I do agree for (196) Mrs. Hooker to make a deed," etc.; which means that she shall make a deed, etc. This shows that Harvey was acting as agent, and then a signature in his name satisfies the requirement of the Statute of Frauds, as was expressly decided in Oliver v. Dix, 21 N.C. 158. In that case, at page 155, it is said that "within the statute the signature need not be that of the principal, nor in his name, but that of the agent is sufficient." Besides, it appears from the answer that the defendant admitted the agency, and ratified the contract of sale made by the agent, *Page 140 
a circumstance which is also relied upon in Oliver v. Dix as having a binding effect upon the principal. Redmond v. Coffin, 17 N.C. 439, andScott v. McAlpin, 4 N.C. 587, referred to by the defendant's counsel, have no application, because they were cases of deeds of conveyance executed by attorneys in fact, and not cases of notes or memorandums of agreements under the Statute of Frauds.
2. The second objection is, that the note or memorandum of the contract is too vague and indefinite in several particulars: first, in that the defendant is to execute a deed without saying for what quality of estate; secondly, in that the location of the house and lot is stated only to be north of Kinston, without saying how far north; thirdly, in that the name of Mrs. Hooker is ambiguous, and, being a patent ambiguity, can not be aided by extrinsic evidence.
In noticing this objection, we must bear in mind that a note or memorandum of a contract is, in its very essence, an informal and imperfect instrument. Its object is to furnish aid to the memory of a transaction, and, though it must distinctly set forth all the material terms of the contract (Mallory v. Mallory, 45 N.C. 80), it will answer the purpose, if it do so in such words as will enable the court, without danger of mistake, to declare the meaning of the parties. An agreement. (197) by a person having a fee simple interest in land to make a deed for it, is universally understood (in the absence of anything to show the contrary) to mean a deed to convey the fee. So as to the location of the property, when it is said in common parlance that a house and lot is north of a particular town, it would always be understood as being situated somewhere in the vicinity of the north part of the town. At all events, when the house and lot are spoken of as her house and lot, and the defendant admits that she had but one in the county, there can be no difficulty about the identification. Under such circumstances the description becomes specific and certain, just as a legacy of "my twenty-five shares of bank stock," the testator having just that number of shares, would be specific, while a bequest of twenty-five shares, without the addition of the word "my," would be a general legacy. Davis v. Cain,36 N.C. 304. In this respect the present case differs materially from those of Allen v. Chambers, 39 N.C. 125; Plummer v. Owens, 45 N.C. 254;Murdock v. Anderson, 57 N.C. 77, and Capps v. Holt, 58 N.C. 153, referred to by the defendant's counsel.
Mrs. Hooker admits her identify with the person who authorized Amos Harvey to sell her house and lot, which is also admitted to be the house and lot mentioned in the pleadings, and this is perhaps a sufficient answer to the objection; but we regard the name Mrs. Hooker as rather an imperfect than an ambiguous description, and therefore liable to explanation by testimony dehors the instrument, like the case of the *Page 141 
bequest to the Deaf and Dumb Institution. Institute v. Norwood, 45 N.C. 65. That explanation is amply furnished by admissions in the defendant's answer.
3. The next objection is one of vital importance, not only to the parties to this case, but to the whole community. The answer alleges that the consideration paid for the purchase of her house and lot was in Confederate treasury notes, and the defendant's counsel contends that such consideration was illegal, and that therefore the (198) contract of purchase founded on it was void. The illegality is said to consist in the passing of the Confederate treasury notes, which, it is contended, had a tendency to aid the rebellion. The memorandum of the agreement does not state in what kind of currency the purchase money was to be paid; but as the cause is set for hearing upon the bill and answer, without any replication, we must take the allegation of the answer, that the price of the house and lot was paid in Confederate treasury notes, to be true. The question is thus fairly and directly presented, Whether a contract of purchase, founded upon such a consideration, can be enforced in a Court of Equity?
As a general rule it must be conceded that a contract, the basis of which is an illegal consideration, is void both in law and equity. Ex dolomalo non oritur actia, is a maxim too well established to be disputed, and too beneficial in its operation to be repudiated by any court.
The question, then, is reduced to this: Was the use of the Confederate currency as the medium of exchange in the transaction between the parties to the contract, illegal? In some of the other Southern States it is said that it has been so decided, and the counsel for the defendant has referred us to the note of a decision made in Tennessee to that effect. 1 Am. Law. Rev., 591. The case referred to is Harris v. Thornburg,43 Tenn. 156, and is thus shortly stated: "A note was given for one hundred dollars in Confederate treasury notes lent to the maker. At the trial the jury were instructed that if the defendant borrowed Confederate treasury notes, knowing at the time what he was getting, he would be liable on the note, and the jury returned a verdict accordingly for the plaintiff. On writ of error to the Supreme Court, the judgment on this verdict was reversed, that tribunal holding that the consideration for the note in suit, being treasury notes issued by rebels in violation of the highest law of the land, and for the (199) purpose of levying war against the government, was illegal, and the note given by them void."
I am saved from the necessity of considering whether this case was properly decided by the Supreme Court of Tennessee, for the concurrent action of the Convention and the General Assembly of this State has prescribed a different rule of law for us. The Convention of 1865 *Page 142 
passed an ordinance entitled "An ordinance declaring what laws and ordinances are in force, and for other purposes," in which, among other things, it is ordained that "All contracts, executory and executed, of every nature and kind made on or since 20 May, 1861, shall be deemed to be valid and binding between the parties, in like manner, and to the same extent, and not otherwise, as if the State had not, on the said day, or afterwards, attempted to secede from the United States; and it shall be the duty of the General Assembly to provide a scale of depreciation of the Confederate currency from the time of its first issue to the end of the war," etc. See Ordinances of the Convention of 1865, page 56. The injunction upon the General Assembly imposed by the above ordinance was carried out by Laws 1866, chapters 38 and 39; the first of which is entitled: "An act relating to debts contracted during the war," and the second: "An act to establish a scale of depreciation of Confederate currency."
These provisions of the State authorities, having been made for the purpose of enforcing and not of impairing the obligation of contracts, do not conflict with the Constitution of the United States, and are therefore valid and binding upon all the people of the State. It follows that the defendant can not object to the fulfillment of her contract on the ground that she chose to take Confederate treasury notes in payment for the price of her house and lot.
4. The fourth and last objection taken against the claim of (200) the plaintiff to a specific performance is, that the bargain is a hard and unequal one, and on that account the Court of Equity ought not to enforce it, but leave the plaintiff to his remedy at law, by a suit for damages. A conclusive answer to this objection is, that there is nothing in the pleadings to show any inadequacy of price, or any other inequality in the transaction. The agreement was, so far as appears, fairly made by the defendant's agent, who received the purchase money and paid it over to her without a murmur of disapprobation. The plaintiff was thereupon permitted to take possession of the premises, and has held them ever since, using them and expending money upon them as if they were his own.
The circumstances of the present case differ, therefore, very materially from those of Cannaday v. Shepard, 55 N.C. 224, and the other cases cited by the defendant's counsel, in which the court refused to decree a specific execution.
The plaintiff is entitled to the relief he seeks, and may have a decree accordingly.