GASTON-LINCOLN TRANSIT, INC. v. MARYLAND CASUALTY COMPANY

No. 59

(Filed 1 July 1974)

1. Equity § 1— maxim

He who seeks equity must do equity.

2. Insurance § 10— reformation of contract — payment of additional premiums

Generally, when an insurance contract is reformed, equity requires the insured, as a condition to the equitable relief granted, to pay the insurer any additional premium lawfully due under the policy as reformed.

3. Appeal and Error § 57— findings of fact — review on appeal

Where the jury trial is waived, findings of fact supported by competent evidence are conclusive on appeal.

4. Estoppel §§ 4, 8; Insurance § 10— reformation of policy — applicability of equitable estoppel

In an action to reform an insurance policy by eliminating an endorsement purporting to limit the territorial coverage provided by the

policy, the doctrine of equitable estoppel was properly applied against defendant where the evidence showed that defendant failed to notify plaintiff of the endorsement to the renewal policies—conduct reasonably calculated to convey the impression that the renewal policy imposed no territorial restriction on the coverage; this was conduct which would lead a reasonably prudent person to believe that defendant intended for plaintiff to rely on its renewal policies to contain coverage as previously provided; and defendant had actual knowledge that the endorsement had been attached and that plaintiff was never informed of the change.

5. **Estoppel §§ 4, 8; Insurance § 10— reformation of insurance policy — applicability of equitable estoppel**

Evidence was sufficient to entitle plaintiff to the application of equitable estoppel where the evidence tended to show that plaintiff lacked knowledge that defendant had attached an endorsement to the insurance policy in question, and plaintiff had the right to rely upon the assumption that the renewal policy would contain the same terms as the original policy, and was thus legally and equitably excused from examining the renewal policy; plaintiff relied upon the conduct of defendant in that it renewed the policy and paid all premiums requested by defendant, assuming that the renewal policy covered all the business activities covered by the original policy; and plaintiff thus acted to its prejudice, retaining and paying premiums upon an insurance contract inadequate to cover its business activities, and has suffered much trouble and expense in prosecuting this action to reform the renewal policy and to recover for its losses under the policy as reformed.

6. **Estoppel §§ 4, 8; Insurance § 10— reformation of policy — payment of additional premiums not required**

Defendant which either intentionally, neglectfully or indifferently reduced insurance coverage of plaintiff without giving plaintiff notice was not entitled to recover additional premiums from plaintiff upon reformation of the policy by the court to provide full coverage.

7. **Insurance § 10— policy renewal — assumption that terms are same**

Generally, an insured in renewing his policy may rely upon the assumption that the renewal will be upon the same terms and conditions of the earlier policy, and therefore he is not bound by a reduction in the renewal policy where the change was not called to his attention at the time of renewal.

ON *certiorari* to the Court of Appeals to review its decision, 20 N.C. App. 215, 201 S.E. 2d 216, upholding judgment of *McLean, J.*, 7 May 1973 Session, GASTON Superior Court.

Civil action to reform an insurance policy by eliminating an endorsement purporting to limit the territorial coverage provided by the policy and to recover the sum of $10,000.00 for the loss by fire of a motor bus covered by the policy.

The parties waived trial by jury and agreed for the court to hear the evidence, find the facts, make conclusions of law, and enter judgment.

Based on the evidence adduced at the trial, Judge McLean found facts, and the findings pertinent to this appeal are summarized in the numbered paragraphs below:

1. Plaintiff is a North Carolina corporation, domiciled in Gaston County and engaged in the business of a motor carrier for hire on scheduled and charter operations as a carrier of passengers pursuant to authority granted by the North Carolina Utilities Commission and the Interstate Commerce Commission.

2. Defendant is a Maryland corporation with principal offices in Baltimore, Maryland, and at all times pertinent to this case engaged in the insurance business in North Carolina. The George A. Jenkins Agency, Inc., is defendant's agent in Gastonia, North Carolina.

3. For several years, particularly from December 31, 1966 to December 31, 1971, plaintiff was insured by defendant under Automobile Liability and Physical Damage Policies, and renewals of policies. All renewal policies since 1966 were issued through the George A. Jenkins Agency, Inc. The term of each policy, or renewal thereof, coincided with the calendar year. The following policies, pertinent to this case, were issued by defendant to plaintiff:

>    Policy No. 2-3662696, effective 31 December 1967 for one year.

>    Policy No. 2-3785758, effective 31 December 1968 for one year.

>    Policy No. 2-3895407, effective 31 December 1969 for one year.

>    Policy No. 2-3953208, effective 31 December 1970 for one year.

Each of the foregoing policies stated on its face that it was a renewal of the policy for the preceding year.

4. Defendant Maryland Casualty Company (not its agent in Gastonia) inserted in renewal policy No. 2-3895407, which covered the period of 31 December 1969 to 31 December 1970, an endorsement entitled "Auto 1145." The renewal policy No.

2-3953208 which covered the period of plaintiff's loss (31 December 1970 to 31 December 1971) contained an identical endorsement entitled "Auto 1145." This endorsement appeared for the first time in these two policies. It had never been attached to any other policy for any prior year. Said endorsement purported to restrict coverage to the operation of plaintiff's motor buses in a territory within 50 miles (as to some buses and 150 miles as to others) of the principal place of garaging of said buses. The principal place of garaging of plaintiff's buses was Gastonia, North Carolina, which is more than 150 miles from Louisville, Kentucky.

5. Renewal policy No. 2-3953208 was in full force and effect on 5 July 1971 when plaintiff's 1956 GMC Bus No. 104 (Serial No. PD 41041676) was totally destroyed by fire while on a charter trip to Louisville, Kentucky, and while in said city and state. Said bus was listed on the schedule of insured vehicles in the policy with coverage limited to the sum of $10,000.00. By reason of the fire plaintiff's bus was damaged in an amount exceeding $10,000.00.

6. Defendant received prompt notice of the loss and denied liability by reason of the "Auto 1145" endorsement.

7. Plaintiff did not learn that the endorsement "Auto 1145" had been attached to his renewal policies until approximately two days after the loss when it was called to plaintiff's attention by a representative of Maryland Casualty Company. Plaintiff had not read the renewal policies since 1966 when it called upon the George A. Jenkins Agency, Inc., to renew its coverage as it previously existed in the outstanding policy in force at the time of renewal and which defendant's agent agreed to do. Upon learning of the endorsement "Auto 1145" plaintiff discussed it with George A. Jenkins, President of the George A. Jenkins Agency, Inc., and he advised plaintiff that notwithstanding the report he had received from Maryland Casualty Company denying liability, plaintiff should not be concerned because "you will get your money."

8. Prior to the loss, neither Maryland Casualty Company nor its agent, the George A. Jenkins Agency, Inc., had given plaintiff any notice or information as to the insertion of "Auto 1145" endorsement in the renewal policy.

9. At the time of plaintiff's loss by fire on 5 July 1971, the policy then in force covered a total of forty buses then owned

and operated by plaintiff and its affiliated companies. Defendant's records show that the premium paid on policy No. 2-3895407 for the year 31 December 1969 to 31 December 1970 was $1,438.75; and the premium paid on policy No. 2-3953208 for the year 31 December 1970 to 31 December 1971 was $2,211.22.

10. Maryland Casualty Company deliberately and intentionally inserted endorsement "Auto 1145" in its renewal policy for the year preceding the policy period in which plaintiff's loss occurred without giving any notice thereof to its agent, the George A. Jenkins Agency, Inc., or to the plaintiff. Neither defendant nor its agent ever gave any notice to plaintiff that said endorsement had been attached to said renewal policies. Defendant's agent George A. Jenkins and the George A. Jenkins Agency, Inc., knew plaintiff was engaged in the operation of a charter bus business and regularly transported passengers for many miles beyond a 150-mile radius of Gastonia, North Carolina.

11. Each policy and renewal policy issued by defendant to plaintiff throughout their years of dealing with each other, including the policy in force at the time of plaintiff's loss, was written entirely by defendant. Defendant's conduct in inserting endorsement "Auto 1145" in the renewal policies in which said endorsement appears, without notice to plaintiff, constitutes inequitable and fraudulent conduct. Defendant had a duty to notify plaintiff of any alteration or change of coverage in any renewal policy at the time of its issuance. In the absence of such notice, plaintiff had a right to assume that defendant would renew the policies of insurance here in question on the same terms as the original policy and that the renewals would provide the same coverage. By inserting endorsement "Auto 1145" in the renewal policies without notice to plaintiff, the defendant materially changed the coverage purchased by plaintiff and plaintiff is entitled to have the renewal policies reformed to conform to the prior and original policy which did not contain said endorsement. Defendant had a duty to speak and advise plaintiff of any change of coverage upon issuance of a renewal policy. By its silence it practiced a fraud upon the plaintiff.

12. Plaintiff is entitled to reform the renewal policies by deleting the endorsement "Auto 1145" *without any further assessment of premiums*. By its conduct defendant has waived the

right, if any it had, to demand additional premiums and is estopped to claim any further payment of premiums.

Upon the foregoing findings of fact, and other findings not pertinent here, Judge McLean entered his conclusions of law and signed judgment (1) reforming policy No. 2-3895407 covering the period 31 December 1969 to 31 December 1970 and policy No. 2-3953208 covering the period 31 December 1970 to 31 December 1971 by deleting endorsement "Auto 1145"; and (2) awarding plaintiff the sum of $10,000.00 for the loss by fire of its motor bus with interest thereon from 5 July 1971 until paid, together with the costs of the action. This judgment was upheld by the Court of Appeals and we allowed certiorari for the limited purpose of reviewing that decision with respect to the question of additional premiums.

*Basil L. Whitener and Anne M. Lamm, attorneys for plaintiff appellee.*

*Harry C. Hewson of Jones, Hewson & Woolard, attorney for defendant appellant.*

HUSKINS, Justice.

Defendant contends that when equitable reformation of an insurance policy "expands" the coverage, equity requires the insured to pay the proper premium for the additional coverage. Two policies were reformed in this case by eliminating endorsement "Auto 1145" which restricted territorial coverage on plaintiff's buses to a 50-mile radius of Gastonia for some buses and a 150-mile radius for others. Defendant claims additional premiums of $816.00 on policy No. 2-3895407 (1969-70) and $4,007.00 on policy No. 2-3953208 (1970-71). We allowed certiorari for the limited purpose of reviewing the decision of the Court of Appeals on the premium question only.

The trial court found, *inter alia,* (1) that plaintiff is entitled to reformation of the renewal policies by deletion of the endorsement *without any further assessment of premiums,* and (2) that by its conduct defendant has waived the right, if any it had, to demand additional premiums and is estopped to claim any further payment of premiums.

[1] Defendant asserts in its petition for certiorari that the Court of Appeals, in upholding the trial court's denial of additional premiums, ignored the equitable maxim that "he who

seeks equity must do equity." Of course, this maxim is part of the rules and procedures applicable to equitable actions in this State. "One of the best known and most often reiterated maxims of equity is: 'He who seeks equity must do equity.' It is a mandatory application of the 'Golden Rule' in the field of law administration, and has been said to express the fundamental principle of equity jurisprudence." *Hairston v. Keswick Corp.*, 214 N.C. 678, 200 S.E. 384 (1939) ; *accord, Pinnix v. Casualty Co.*, 214 N.C. 760, 200 S.E. 874 (1939) ; *Bank v. McEwen*, 160 N.C. 414, 76 S.E. 222 (1912). *See generally,* 1 Story's Equity Jurisprudence §§ 69-75 (14th ed. 1918) and 2 Pomeroy on Equity §§ 385-396 (5th ed. 1941).

[2]   Generally, when an insurance contract is reformed, equity requires the insured, as a condition to the equitable relief granted, to pay the insurer any additional premium lawfully due under the policy as reformed. *See Modica v. Hartford Accident and Indemnity Co.*, 236 Cal. App. 2d 588, 46 Cal. Rptr. 158 (1965) ; *Maier Brewing Co. v. Pacific National Fire Insurance Co.*, 218 Cal. App. 2d 869, 33 Cal. Rptr. 67 (1963) ; *Fireman's Fund Indemnity Co. v. Boyle General Tire Co.*, 392 S.W. 2d 352 (Tex. 1965). This equitable requirement simply applies the maxim "he who seeks equity must do equity" to the reformation of insurance contracts. With this principle in mind, we turn to the question whether, under the facts of this case, this maxim should be applied and plaintiff required to pay additional premiums.

In the case before us, there are specific findings, supported by competent evidence, of inequitable conduct by defendant. The trial judge, sitting as judge and jury, found that defendant by its conduct "has waived any right, if any it had, to demand additional or further payments by plaintiff and is estopped to claim or demand any further payment of premiums," and held that "defendant is not entitled to any recomputation of premiums for any period that it has insured the plaintiff. . . ."

[3]   Where jury trial is waived, as here, findings of fact supported by competent evidence are conclusive on appeal. *Cogdill v. Highway Commission*, 279 N.C. 313, 182 S.E. 2d 373 (1971) ; *Huski-Bilt, Inc. v. Trust Co.*, 271 N.C. 662, 157 S.E. 2d 352 (1967). There is competent evidence in the record (and no evidence to the contrary) that defendant intentionally inserted endorsement "Auto 1145" in the renewal policies at its home office in Baltimore, Maryland, and did not disclose this change to

plaintiff. From the moment it learned of the accident, defendant has contended it was not liable, taking the position that plaintiff had been given notice. At trial, however, the only evidence presented by defendant even remotely pertaining to notice was a copy of plaintiff's 1968 policy (2-3785758) with endorsement "Auto 1145" attached, which was taken from the files of Maryland Casualty Company's Charlotte office. All the evidence presented by plaintiff showed that the George A. Jenkins Agency had no knowledge of the endorsement and that plaintiff had never been given notice of the endorsement and had no knowledge of it.

After hearing all the evidence, Judge McLean determined that as a result of its conduct, defendant was estopped, or had waived the right, to demand further payment of premiums. Although the terms *waiver* and *estoppel* are not synonymous, they are often used interchangeably with reference to insurance contracts, especially in cases of waiver implied from conduct. *Hospital v. Stancil*, 263 N.C. 630, 139 S.E. 2d 901 (1965) ; 28 Am. Jur. 2d, Estoppel and Waiver § 30 (1966). Thus the trial judge applied the doctrine of equitable estoppel, or estoppel *in pais*, in this case.

"Estoppel by misrepresentation, or equitable estoppel (which is estoppel *in pais*), grows out of such conduct of a party as absolutely precludes him, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, *or of remedy,* as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either by contract or of remedy. This estoppel arises when anyone, by his acts, representations, or admissions, *or by his silence when he ought to speak out,* intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824 (1911) (emphasis added).

The essential elements of equitable estoppel in this jurisdiction are enumerated most precisely in *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669 (1953). We there said:

"The doctrine of estoppel by conduct—estoppel *in pais*—rests upon principles of equity. It is designed to aid the law in the administration of justice when without its aid injustice would result, the theory being that it would be against the principles of equity and good conscience to permit a party against whom the estoppel is asserted to avail himself of what must otherwise be his undisputed legal rights. *Long v. Trantham,* 226 N.C. 510, 39 S.E. 2d 384; *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114; *Scott v. Bryan,* 210 N.C. 478, 187 S.E. 756; *Stone v. Bank of Commerce,* 174 U.S. 412, 43 L.Ed. 1028.

"Therefore, in determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Bank v. Winder,* 198 N.C. 18, 150 S.E. 489; *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824; 19 Am. Jur., Estoppel, Sections 42 and 46."

[4]  In applying the law to the facts of this case, we first focus on defendant to determine whether its conduct is that of a party against whom the doctrine of equitable estoppel applies. It appears from the record that (1) defendant failed to notify plaintiff of the endorsement to the renewal policies—conduct reasonably calculated to convey the impression that the renewal

policy imposed no territorial restriction on the coverage; (2) this is conduct which would lead a reasonably prudent person to believe that defendant intended for plaintiff to rely on its renewal policies to contain coverage as previously provided; and (3) defendant had actual knowledge that the endorsement had been attached and that plaintiff was never informed of the change.

[5]  With respect to plaintiff, it is equally clear that its conduct is that of a party entitled to seek the equitable protection of the doctrine. The evidence shows: (1) Plaintiff lacked knowledge that the endorsement had been attached, and as held by the Court of Appeals in this case, 20 N.C. App. 215, 201 S.E. 2d 216 (1973), plaintiff had the right to rely upon the assumption that the renewal policy would contain the same terms as the original policy, and was thus legally and equitably excused from examining the renewal policy; (2) plaintiff relied upon the conduct of defendant in that it renewed the policy and paid all premiums requested by defendant, assuming that the renewal policy covered all the business activities covered by the original policy; and (3) plaintiff thus acted to its prejudice, retaining and paying premiums upon an insurance contract inadequate to cover its business activities, and has suffered much trouble and expense in prosecuting this action to reform the renewal policy and to recover for its losses under the policy as reformed.

[6]  We conclude therefore that all the essential elements of equitable estoppel are satisfied by the evidence and that the trial court correctly applied this doctrine when it held that defendant is not entitled to collect additional premiums. Defendant's conduct is such that it would be against the principles of equity and good conscience to permit it to assert its otherwise undisputed right to receive additional premiums allegedly occasioned by reformation of the policy.

Defendant is in no position to assert that plaintiff must do equity in order to seek equity. "It is not every defendant who asserts this equitable defence, who is really entitled to it. He must not have conducted himself in such a manner, or placed conditions and circumstances about the plaintiff that would make it inequitable for him to avail himself of this defence. It may be, and frequently is the case, that but for the illegal or wrongful act of the defendant, no damage would have occurred, and hence, no cause of action would have arisen; and to permit him to set up this defence would be to give him an unjust ad-

vantage by reason of his own wrong." 1 Story's Equity Jurisprudence § 74 (14th ed. 1918).

[7] Plaintiff was not bound by the endorsement "Auto 1145." "Generally, an insured in renewing his policy may rely upon the assumption that the renewal will be upon the same terms and conditions as the earlier policy, and therefore he is not bound by a reduction in the renewal policy where the change was not called to his attention at the time of renewal." Annot., Renewal Policy—Reduction in Coverage, 91 A.L.R. 2d 546, § 2 (1963). Plaintiff was not negligent in failing to examine the renewal policy because it was entitled to assume that the terms of the new policy were the same as those of the expiring policy. *Setzer v. Insurance Co.*, 257 N.C. 396, 126 S.E. 2d 135 (1962) ; Annot., 81 A.L.R. 2d 7, § 16 at 71 (1962).

Here, defendant either intentionally, neglectfully or indifferently reduced the coverage without giving the notice that plaintiff was entitled to receive. Then, notwithstanding the fact that the rights of the parties were controlled by the terms of the original contract, defendant resisted plaintiff's claim through the trial court and two appellate courts in consequence of which plaintiff has been forced to devote much time to this matter and to expend large sums for legal fees. Under those circumstances, no equitable principle with which we are familiar requires plaintiff to pay additional premiums (alleged to be $816.00 on one policy and $4,007.00 on the other) in order to obtain the $10,000.00 coverage which, but for defendant's conduct, would have been received with no added expense.

[6] We hold that the doctrine of equitable estoppel, which is based on an application of the Golden Rule to the everyday affairs of men, is applicable in this case and precludes defendant, both at law and in equity, from asserting its right to recover additional premiums. *McNeely v. Walters*, 211 N.C. 112, 189 S.E. 114 (1937). Otherwise, either bad faith or careless business practices would be encouraged because the party at fault, made whole each time his mistake or neglect or intentional act is discovered, would have nothing to lose.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.