JOHN W. BROOKS v. HAROLD D. HACKNEY AND MARGARET B. HACKNEY

No. 590A90

(Filed 12 June 1991)

1. **Frauds, Statute of § 2.2 (NCI3d) — contract to convey realty — patently ambiguous description**

The description in a written agreement for the purchase and sale of twenty-five acres of a 113-acre tract was patently ambiguous where the northern boundary was described as "with the Whitehead line. Thence straight to road that goes by Plainfield Church and with the road to the church to include 25 acres in all" since this language fails adequately to specify where the parties intended to divert from the Whitehead line, and the closing line could be in any number of locations in order to include the 25 acres. Therefore, the contract fails for indefiniteness of description and is void under N.C.G.S. § 22-2.

**Am Jur 2d, Statute of Frauds §§ 322, 323.**

2. **Estoppel § 4.7 (NCI3d) — contract to purchase land — acceptance of benefits — estoppel to deny validity**

Plaintiff was estopped to deny the validity of a contract for the purchase and sale of twenty-five acres of land which contained a patently ambiguous description of the land to be conveyed where plaintiff made the payments required by the agreement for nearly eight years and, when requested to do

so by defendant, paid a prorated portion of the property taxes on defendants' 113-acre tract; although evidence as to plaintiff's use of the property was uncertain, plaintiff's regular payments effectively reserved the use of the land for plaintiff whether or not he exercised his rights, and defendants would reasonably have believed that they were precluded from selling or renting the property to someone else; and the indefiniteness of the closing boundary line in the description was alleviated by defendants' stipulation allowing plaintiff to select any closing boundary line of his choosing consistent with the other known points in the description which would cause the parcel to contain twenty-five acres.

**Am Jur 2d, Estoppel and Waiver § 81; Statute of Frauds § 569.**

Justice MARTIN dissenting.

APPEAL pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 100 N.C. App. 562, 397 S.E.2d 361 (1990), reversing the judgment of *Battle, J.*, entered at the 31 July 1989 Civil Session of Superior Court, CHATHAM County. Heard in the Supreme Court 11 March 1991.

*Law Firm of Wade Barber, by Wade Barber, for plaintiff-appellee.*

*Edwards & Atwater, by Phil S. Edwards, and Love & Wicker, by Dennis Wicker, for defendant-appellants.*

MEYER, Justice.

This case presents the questions of whether an agreement for the sale of real estate fails for indefiniteness of the description of the property and, if so, whether it will, nevertheless, be enforced on principles of equity.

An examination of the pleadings, affidavits, and depositions filed in support of the motions for summary judgment reveals the following: In 1979, defendant-sellers owned approximately 113 acres of land on the east side of Plainfield Church Road in Chatham County. Plaintiff and his now-deceased wife approached the defendants, and after walking with defendants around the perimeter of the 113-acre tract, plaintiff offered to buy twenty-five acres in

the south section of defendants' property. Defendants do not dispute that plaintiff anticipated buying the whole tract in twenty-five acre increments over time.

The defendants agreed to finance the purchase of the first twenty-five acres. On 17 February 1979, plaintiff, in his own handwriting, wrote the following on two separate sheets of paper without the assistance of defendants.

25 acres $43,750.00

> Beginning at a stone at Johnson Buckner's corner at Plainfield Church to a stone Burlow Johnson's corner due east. Thence north to Amick Andrews corner. *Thence with the Whitehead line. Thence straight to road that goes by Plainfield Church and with the road to the church to include 25 acres in all.*

> Paid $6,000 down payment and $400/month beginning March 1, 1979 with interest at the rate 12%

(Emphasis added.) Plaintiff and his wife signed one copy, defendants signed the other.

There is no dispute that the writings construed together formed an agreement between the parties. Plaintiff, however, contends that the writings are too indefinite to form a valid, binding contract for the sale of real estate. The writings generally describe the southernmost portion of defendants' larger tract, and defendants concede that the writings were the only agreement between the parties as to the boundaries of the twenty-five acre tract.

Separately, plaintiff paid defendants $50.00 per month to rent a house in the northern portion of the 113-acre tract owned by defendants. There is some dispute as to the extent that the plaintiff used the twenty-five acre tract that he allegedly contracted to purchase, but it is undisputed that defendants did not negotiate or transact to sell or rent the southernmost twenty-five acres of the property to others. While the southern portion of defendants' land consists of a hayfield, it is otherwise mostly wooded, and plaintiff's lack of use of the land, even if true, should not have affected defendants' reliance on the agreement.

While the interest rate stipulated in the agreement was later decreased to 11% for payments beginning 1 March 1979, plaintiff paid the down payment and for a period of eight years and four months made regular monthly payments of at least $400.00.

**BROOKS v. HACKNEY**

[329 N.C. 166 (1991)]

Moreover, when requested, plaintiff also paid a prorated portion of defendants' property taxes.

Plaintiff stopped making payments in June 1987 after the parties had negotiated for the purchase of additional portions of defendants' property and could not come to an agreement. Plaintiff then requested a deed and a survey, for which he offered to pay, for the twenty-five acres covered in the original agreement. Defendants objected to the survey being performed by the particular surveyor suggested by the plaintiff but contend they have always stood ready, willing, and able to convey the original twenty-five acres upon payment in full of the purchase price. Plaintiff, however, felt that an agreement could not be reached and purchased other property on 19 May 1987.

Plaintiff mailed defendants a letter dated 1 July 1987, repudiating the agreement and requesting the return of the $50,700 that he had already paid. At that time, approximately $21,000 was still owed pursuant to the terms of the writing.

After defendants refused to return the plaintiff's money, plaintiff filed suit on 20 October 1987. Plaintiff alleges (1) the agreement was void for failure to comply with the statute of frauds;[1] (2) since the agreement is void, the defendants have been unjustly enriched; and (3) alternatively, if a valid contract does exist, the defendants breached the contract by not tendering a deed, refusing to pay for a survey of the property, and later refusing to permit a survey of the property. Defendants filed an answer and counterclaim alleging, *inter alia*, that a valid contract existed, which created a security interest in the real property in favor of the defendants. More significantly, defendants amended their answer to assert the defense of estoppel and laches.

After the institution of this action, defendants hired the same surveyor, to whom they had previously objected, to survey the twenty-five acre tract. Using the writing, the surveyor determined that the northern boundary could be drawn in an infinite number

---

1. Plaintiff contends here that the writings are so indefinite in the description of the land as to violate the statute of frauds. In response, defendants contend that plaintiff's use of the statute of frauds to void the contract is an inappropriate "offensive" use of a statute which was intended to be used as a defensive vehicle only. However, as plaintiff notes, defendants counterclaimed, alleging that the contract is valid, thereby converting plaintiff's use of the statute of frauds to an affirmative defense.

of ways. Defendants then stipulated by affidavit filed with the court that plaintiff could locate the questioned boundary in any way that was consistent with other known points in the agreement— in essence giving plaintiff his choice of any number of ways the closing boundary line could be drawn.

After a hearing on motions for summary judgment filed by both parties, the trial court granted summary judgment for defendants, and plaintiff appealed.[2] The Court of Appeals reversed the trial court and held that the contract is patently ambiguous and therefore void and that defendants have been unjustly enriched. In dissent, Judge Phillips opined, among other things, that the plaintiff should be estopped from denying the existence of the agreement.

I.

[1] Plaintiff contends that no valid, written contract was ever formed in that the subject of the agreement was never agreed upon by the parties because the description of the property to be conveyed was indefinite. We agree.

As the trial court granted summary judgment in favor of defendants on their claim that a valid contract for the sale and purchase existed, we now address that issue. As a general matter, a contract must be sufficiently definite in order that a court may enforce it. *See Property Owners Assoc. v. Curran and Property Owners Assoc. v. Williams*, 55 N.C. App. 199, 284 S.E.2d 752 (1981), *disc. rev. denied*, 305 N.C. 302, 291 S.E.2d 151 (1982); *see generally* J. Calamari & J. Perillo, *The Law of Contracts* § 2-9 (3d ed. 1987). With regard to contracts for the purchase and sale of real property, this Court has said:

> The statute of frauds, G.S. 22-2, provides that "All contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith

---

2. We note that defendants, in their motion for summary judgment, merely alleged that plaintiff's complaint failed to state a cause of action. Defendants failed to assert a motion for summary judgment on their own counterclaim, which alleged that there was a valid contract. Nevertheless, summary judgment was appropriately entered by the trial court. Pursuant to Rule 56(c) of our Rules of Civil Procedure, "[s]ummary judgment, when appropriate, may be rendered against the moving party." N.C.G.S. § 1A-1, Rule 56(c) (1990).

## BROOKS v. HACKNEY

[329 N.C. 166 (1991)]

. . . [.]" A memorandum or note is, in its very essence, an informal and imperfect instrument. *Phillips v. Hooker,* 62 N.C. 193. But it must contain expressly or by necessary implication the essential features of an agreement to sell. *Elliott v. Owen,* 244 N.C. 684, 94 S.E. 2d 833; *Keith v. Bailey,* 185 N.C. 262, 116 S.E. 729; *Hall v. Misenheimer,* 137 N.C. 183, 49 S.E. 104. It must contain a description of the land, the subject-matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers. *Searcy v. Logan,* 226 N.C. 562, 39 S.E. 2d 593; *Timber Co. v. Yarbrough,* 179 N.C. 335, 102 S.E. 630; *Bateman v. Hopkins,* 157 N.C. 470, 73 S.E. 133; *Farmer v. Batts,* 83 N.C. 387. If the description is sufficiently definite for the court, with the aid of extrinsic evidence, to apply the description to the exact property intended to be sold, it is enough. *Lewis v. Murray,* 177 N.C. 17, 97 S.E. 750; *Simmons v. Spruill,* 56 N.C. 9.

The most specific and precise descriptions require some proof to complete the indentification [sic] of the property. More general descriptions require more. The only requisite in ·evaluating the written contract, as to the certainty of the thing described, is that there be no patent ambiguity in the description. *Norton v. Smith,* 179 N.C. 553, 103 S.E. 14. There is a patent ambiguity when the terms of the writing leave[ ] the subject of the contract, the land, in a state of absolute uncertainty, and refer to nothing extrinsic by which it might possibly be identified with certainty. *Gilbert v. Wright,* 195 N.C. 165, 141 S.E. 577; *Bryson v. McCoy,* 194 N.C. 91, 138 S.E. 420.

*Lane v. Coe,* 262 N.C. 8, 12-13, 136 S.E.2d 269, 272-73 (1964).

If the description set forth in the writing is uncertain in itself to locate the property, and refers to nothing extrinsic by which such uncertainty may be resolved, such ambiguity is said to be "patently" ambiguous. *Overton v. Boyce,* 289 N.C. 291, 221 S.E.2d 347 (1976). Parol evidence is not admitted to explain the patently ambiguous description. *Lane v. Coe,* 262 N.C. 8, 136 S.E.2d 269. In such case, the contract is held to be void.

Whether the ambiguity is a patent ambiguity is a question of law to be decided by the court. *Kidd v. Early,* 289 N.C. 343, 222 S.E.2d 392 (1976).

BROOKS v. HACKNEY

[329 N.C. 166 (1991)]

The language which creates the problem here is: "Thence with the Whitehead line. Thence straight to the road that goes by Plainfield Church and with the road to the church to include 25 acres in all." When one attempts to connect these points, this language fails adequately to specify where the parties intended the property line to divert from the Whitehead line, and thus the last call could be in any number of locations in order to include twenty-five acres. The last boundary line is therefore subject to a number of constructions, each with significant variations. The writings at issue here do not refer to anything extrinsic from which the description can be made more certain, and the description is patently ambiguous.

As we said in *Overton*:

Parol evidence may not be introduced to remove a patent ambiguity since to do so would not be a use of such evidence to fit the description to the land but a use of such evidence to create a description by adding to the words of the instrument.

*Overton v. Boyce*, 289 N.C. at 294, 221 S.E.2d at 349.

We hold that the agreement for the conveyance of real property here is patently ambiguous and fails for indefiniteness.

II.

[2] Having determined that the written agreement fails for indefiniteness, we now consider whether, under the peculiar facts of this case, the plaintiff is estopped to take advantage of this fault.[3]

---

3. The dissent misconstrues the nature of equitable estoppel present in this case. It sets out and distinguishes the elements of "estoppel by misrepresentation" and all but ignores the doctrine of "estoppel by acceptance of benefits" or what is sometimes referred to as quasi-estoppel. *Compare* 31 C.J.S. *Estoppel* §§ 59-106 (1964) (estoppel by misrepresentation) *with* 31 C.J.S. *Estoppel* §§ 107-129 (1964 & Cum. Supp. 1991) (quasi-estoppel). The latter form of estoppel is present in this case and was the basis of the estoppel in *Advertising, Inc. v. Harper*, 7 N.C. App. 501, 172 S.E.2d 793 (1973), which the dissent attempts to distinguish. *See also Harris v. Harris*, 50 N.C. App. 305, 274 S.E.2d 489, *disc. rev. denied*, 302 N.C. 397, 297 S.E.2d 351 (1981). As for the dissent's suggestion that the buyer in this case received "negligible" benefits from the contract because he has not received a deed, we note that a deed is not normally transferred in an installment land contract until the final payment is received. In addition, in such circumstances, the law normally grants buyers of real property who use the installment land contract method the right to an equitable mortgage or lien. Therefore, the dissent leaves the incorrect impression that the buyer received nothing here.

**BROOKS v. HACKNEY**

[329 N.C. 166 (1991)]

In an amendment to their answer and in their counterclaim, defendants pled the doctrine of estoppel. *See* N.C.G.S. § 1A-1, Rule 8(c) (1990). "The doctrine of estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result." *Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). Equity serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes. It is well settled that "a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement." *Advertising, Inc. v. Harper*, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970) (lessee estopped to deny the validity of a lease because of insufficient description of the premises where he had paid the rent for seven months of a nine-year lease).

In this case, plaintiff made the payments required by the agreement for nearly eight years and, when requested to do so by the defendants, paid a prorated portion of the property taxes. Furthermore, defendants allege that plaintiff "used the land as he saw fit for almost eight years to raise hogs, cut firewood, and cut hay from the fields." Plaintiff responds that any use he made of the land was minimal and was with the permission of the defendants. Notwithstanding this uncertainty in the evidence as to the plaintiff's use of the property, the plaintiff's regular payments on this agreement effectively reserved the use of the land for the plaintiff whether he exercised his rights or not, and defendants would reasonably have believed that they were precluded from selling or renting the property to someone else. We hold that the defendants reasonably relied on the writing based on plaintiff's payments under the agreement. Therefore, plaintiff is estopped to deny that a valid agreement existed. The indefiniteness of the closing boundary line in the description of the land has been alleviated in this case. Defendants have stipulated to allowing plaintiff to select any closing boundary line of his choosing consistent with

---

Finally, the dissent notes a lack of understanding of the disposition this Court makes of the appeal. We reverse the decision of the Court of Appeals because it found no contract to exist. While we find the written contract between the parties to be unenforceable by reason of the indefiniteness of the description of the property, this Court, on the basis of the theory of estoppel, found a valid agreement of purchase and sale to exist and properly reverses the decision of the Court of Appeals.

the other known points in the description which would cause the parcel to contain twenty-five acres.

Having held that plaintiff is estopped to deny that a valid agreement for the purchase and sale of the land existed, we need not address plaintiff's claim of unjust enrichment. Also, since it was not set out in the dissenting opinion as the basis for the dissent pursuant to Rule 16(b) of the North Carolina Rules of Appellate Procedure, we do not address plaintiff's claim of breach of contract.

Plaintiff, by this action, sought only the return of the amounts paid to defendants, and defendants, in their answer and counterclaim, sought only the recognition of a valid contract in defense of plaintiff's claim. Neither party demanded specific performance of the contract in question. In essence, Judge Battle found only that a valid contract for the purchase and sale of the land existed. His order on summary judgment both allowed defendants' motion for summary judgment and denied plaintiff's motion for summary judgment "without prejudice to the right of the plaintiff to seek enforcement of the contract for the purchase of the property in question."

We therefore remand this case to the Court of Appeals for further remand to the Superior Court, Chatham County, for reinstatement of the trial court's order of summary judgment in favor of defendants and for any further proceedings consistent with this opinion.

Reversed.

Justice MARTIN dissenting.

I agree with the majority opinion that the alleged contract in this case is void under the statute of frauds. N.C.G.S. § 22-2 (1986). However, I cannot agree with the majority that the plaintiff in this case must be estopped from "taking advantage of this fault."[1] *Brooks v. Hackney*, 329 N.C. 166, 404 S.E.2d 854 (1991).

---

1. The majority's characterization of the alleged contract's voidness under the statute of frauds as a "fault" (evidently attributable to plaintiff) appears to stem from the fact that plaintiff handwrote the memoranda himself, and thus if anyone is to be blamed for the poor description, it should be plaintiff. However, when asked where the descriptions in the memoranda of 17 February 1979 came from, plaintiff testified that they were from a deed in *defendants*' chain of title:

There is no issue in this case concerning estoppel by deed. *See generally* 5 Strong's N.C. Index 3d *Estoppel* § 1 (1977). There is no deed directly involved in this case. Nor does the majority appear to analyze the case in terms of promissory estoppel. *See generally* Feinman, *Promissory Estoppel and Judicial Method*, 97 Harv. L. Rev. 678 (1984).

The majority's reliance upon the estoppel theory applied in *Advertising, Inc. v. Harper*, 7 N.C. App. 501, 172 S.E.2d 793 (1970), is misplaced. *Advertising* involved a situation where plaintiff's assignor, Capital Sign Service, Inc., and defendant entered into a lease for a term of nine years of two highway signs. With approval of defendant, Capital constructed and erected the highway signs, defendant paid seven months rent to plaintiff under the terms of the lease, "and [defendant] received benefits from the signs," even after he unilaterally stopped paying rent. *Id.* at 503-05, 172 S.E.2d at 794-95. When defendant stopped paying rent, plaintiff sued to recover damages for breach of the lease agreement. One of defendant's defenses was that the lease agreement was void because "the description of [the] personal property and the land upon which it purports to be located is so vague, uncertain and indefinite as to be not susceptible of identification. . . ." *Id.* at 500, 172 S.E.2d at 794. The Court of Appeals held:

> The contract has been fully and wholly executed by the lessor by constructing and erecting the highway signs according to the terms of the lease and the defendant, having accepted the benefit of these signs, will not now be heard to repudiate the validity of the lease for any uncertainty in the description of the premises.

*Id.* at 505, 172 S.E.2d at 795.

In the instant case, defendants, the vendors, have not executed the land sales contract by delivering a deed to plaintiff, and thus

---

Q. Did anyone dictate those descriptions to you?

A. I took them from the description of the property which they [the defendants] had a copy of—of the land formerly belonging to Luther Perrett.

Q. Was that from the entire deed of the larger tract from which this twenty-five acres was being taken out?

A. That was off of that deed.

Thus, the "fault," if any, may be equally borne by defendants.

BROOKS v. HACKNEY

[329 N.C. 166 (1991)]

plaintiff has received no benefit from the contract in that sense. In addition, while the record shows without contradiction that plaintiff paid $50 per month rent for a house on the northern part of the 113-acre tract, it is undisputed that this was a separate transaction unconnected with the purchase and sale of the twenty-five acre area at issue in this case. Further, although defendants allege that the "plaintiff used the land as he saw fit for the purpose of raising hogs, cutting firewood, and mowing hay," defendant Margaret Hackney herself testified that the field plaintiff mowed hay from was not within "the" twenty-five acres, and that she "gave" him use of the field. She further testified that she and her husband, the male defendant, also mowed hay from portions of the entire tract, including a large field they now contend was part of "the" twenty-five acres. The defendants also took wood (cedar posts) from portions of the entire tract. Plaintiff testified that he never kept hogs in any of the area now contended by the defendants as being "the" twenty-five acres.

Thus, the record does not unequivocally show that plaintiff ever used the area containing the alleged twenty-five acres in any exclusive manner, nor does it show that defendants considered any particular location to have been so dedicated for sale to plaintiff that defendants could not freely reap its benefits for their own use. This situation is a far cry from that in *Advertising*, where the landlord whose estoppel theory prevailed had constructed and erected highway signs for the benefit of defendant on an obviously designated piece of property. The "benefits" which plaintiff gleaned in the instant case, when weighed against his steady monthly payments to defendants ultimately in the amount of $50,700, are negligible. They do not support a conclusion that plaintiff should be estopped from recovering payments he made under a contract which this Court has declared void.

One might also consider whether the doctrine of equitable estoppel might apply to the instant facts. It does not. Equitable estoppel "arises when anyone, by his acts, representations, or admissions, *or by his silence when he ought to speak out*, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Transit, Inc. v. Casualty Co.*, 285 N.C. 541, 548, 206 S.E.2d 155, 159-60 (1974) (emphasis in original, quoting from *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824 (1911)).

In the instant case the party sought to be estopped, that is, the plaintiff, did not induce defendants to believe that any facts existed that did not actually exist. In the absence of any culpable behavior of the plaintiff, it is inappropriate to hold that plaintiff is estopped from denying the enforceability of a contract which is admittedly void under the statute of frauds. *Cf. Wachovia Bank v. Rubish*, 306 N.C. 417, 427, 293 S.E.2d 749, 756 (1982) ("proof of actual misrepresentation is essential" for equitable estoppel.).

As this Court has explained,

[i]n determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are:

[¶] (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert;

(2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon;

(3) knowledge, actual or constructive, of the real facts.

[¶] As related to the party claiming the estoppel they are:

(1) lack of knowledge and the means of knowledge of the truth as to the facts in question;

(2) reliance upon the conduct of the party sought to be estopped; and

(3) action based thereon of such a character as to change his position prejudicially.

*Transit, Inc. v. Casualty Co.*, 285 N.C. at 549, 206 S.E.2d at 160 (citations omitted). The party claiming the estoppel must present *evidence* of these latter three elements in order to prevail under an estoppel theory. *Id.* In the instant case there is no evidence

whatsoever that plaintiff falsely represented to or concealed anything from the defendants. *A fortiori* there was also no evidence of plaintiff's intent to conceal anything. There is no evidence that the plaintiff had "knowledge, actual or constructive, of the real facts." Both plaintiff and defendants were aware of the problem with the description. There was no possible concealment on the part of any party with respect to this. Further, there is no evidence that the fact that the memorandum is void under the statute of frauds was either known by the plaintiff or concealed from the defendants prior to the Court of Appeals' holding below in this case. *See Brooks v. Hackney*, 100 N.C. App. 562, 397 S.E.2d 361 (1990).

. Perhaps the majority is assuming that the defendants' reliance upon the validity of the contract is the basis for the estoppel. However, plaintiff did not conceal its lack of validity from the defendants. In fact, plaintiff himself believed that the contract was valid, and continued to make payments due thereunder. The fact that the contract was later declared void under the statute of frauds in no way can be used by the defendants to support an assertion that the plaintiff was misleading them by claiming that the contract was valid. Finally, again, there is no evidence in the record that the conduct of the plaintiff in concealing a material fact resulted in the defendants changing their position prejudicially. Defendants still have their land, which, according to defendants, has increased in value. If anything, it was the plaintiff whose position was changed prejudicially since he paid more than $50,000 to the defendants who conveyed nothing in return.

The majority's recitation of plaintiff's use of the land in the vicinity of an area where the alleged twenty-five acres might be carved out, again, is not supported by the record. Further, the majority's statement that defendants "would reasonably have believed that they were precluded from selling or renting the property to someone else" is also not supported by any of the pleadings or evidence of record in this case. Defendants in no way alleged or proved that they believed that they were precluded from selling or renting "the property"—whatever this indescribable tract was—to someone else. The record does show that they used this tract while plaintiff was making payments under the now-void contract. Defendants have further failed to show that they are materially prejudiced from receiving $50,700 from plaintiff and failing to deed him anything in exchange. If anything, in this case the equities run towards the plaintiff. Plaintiff in good faith made monthly

## BROOKS v. HACKNEY

[329 N.C. 166 (1991)]

payments to defendants for some eight years, believing he would receive in exchange a valuable tract of land in Chatham County. Defendants refused to cooperate in ascertaining the location of this property, and plaintiff thereupon changed his position by buying and moving to another tract of land at a time when his wife was expecting a child.

Plaintiff cannot and should not be held to be equitably estopped from denying the validity of an admittedly void contract for the conveyance of real property in this case.[2] The contract is void, and the parties should be restored to the position in which they were before the memoranda were written. Plaintiff should receive back from the defendants his $50,700 plus interest and the defendants permitted to keep this land which, they admit, has increased in value since both the date of the contract and the date the suit was filed.

Finally, the disposition rendered by the majority opinion is enigmatic. The majority reverses the Court of Appeals' decision which held that the contract is void, and then remands the case ultimately to the trial court. The trial court had held that summary judgment was appropriate for defendants on the statute of frauds question, that is, it held that the contract was *not* void under the statute of frauds and that plaintiff could proceed "to seek enforcement of the contract" — a remedy not sought by the plaintiff in his pleadings. The majority opinion therefore is holding that although the contract is void the plaintiff may attempt to enforce the contract. As we have seen in the litigation of this case, and as the majority also recognizes however, the contract is not en-

---

2. The majority's approach, as evidenced by its footnote, is a thinly veiled attempt under the guise of "quasi-estoppel" to allow the doctrine of part performance to be the basis for specifically performing an alleged contract which is void under the statute of frauds. However, this Court has firmly rejected the doctrine of part performance as a basis for estoppel. *Grantham v. Grantham*, 205 N.C. 363, 171 S.E. 331 (1933). The doctrine of part performance, or acceptance of benefit, or quasi-estoppel, has no place in the jurisprudence of North Carolina and will not displace the necessity of a writing. *Id.* The specific performance of an unenforceable agreement to convey real property on the basis of part performance would be the equivalent of a suppression of the statute of frauds. *Id. See also Duckett v. Harrison*, 235 N.C. 145, 69 S.E.2d 176 (1952).

Further, the paper writing in this case is unenforceable by whatever name, be it "land contract" or otherwise. Certainly the paper writing was not the typical installment land contract.

forceable because the description is inadequate for the drawing of a deed. To this mercurial result, I cannot concur.

Therefore, I dissent from the decision of the majority and vote to affirm the decision of the Court of Appeals.